UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

Land O'Lakes, Inc.,

        Plaintiff,

v.

Packerland Whey Products, Inc., Packerland
Whey Intermediary Holding Company, Inc.,
Dairy Directions, Inc., Daniel J. Ratajczak,
Jr., Scott A. Ratajczak, Angela R. Ratajczak
and Wayne Hallet,

        Defendants.

Case No. _____

**COMPLAINT
(JURY TRIAL DEMANDED)**

---

For its Complaint against Defendants, Plaintiff states and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Land O'Lakes, Inc. ("Land O'Lakes") is a Minnesota cooperative corporation with its principal place of business located in Arden Hills, Minnesota. Under 28 U.S.C. § 1332(c)(1), Land O'Lakes is a citizen of the State of Minnesota.

2.     Defendant Packerland Whey Products, Inc. ("Packerland") is a Wisconsin corporation with its principal place of business located in Luxemburg, Wisconsin. Under 28 U.S.C. § 1332(c)(1), Packerland is a citizen of the State of Wisconsin.

3.     Defendant Packerland Whey Intermediary Holding Company, Inc. ("Packerland Holding") is a Delaware corporation with its principal place of business located in Illinois. Under 28 U.S.C. § 1332(c)(1), Packerland Holding is a citizen of the States of Delaware and Illinois.

4.     Defendant Dairy Directions, Inc. ("Dairy Directions") is a Wisconsin corporation with its principal place of business located in Monroe, Wisconsin.   Under 28 U.S.C. § 1332(c)(1), Dairy Directions is a citizen of the State of Wisconsin.

5.     Defendant Daniel J. Ratajczak, Jr. ("Daniel") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

6.     Defendant Scott A. Ratajczak ("Scott") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

7.     Defendant Angela R. Ratajczak ("Angela") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

8.     Defendant Wayne Hallet ("Mr. Hallet") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

9.     The amount in controversy in this case, exclusive of costs and interest, exceeds the sum of $75,000.00.

10.     The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) based upon the complete diversity of citizenship between Land O'Lakes, on the one hand, and Packerland, Packerland Holding, Dairy  Directions, Daniel, Scott, Angela and Mr. Hallet, on the other hand, and the fact that the amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

**A.    Background.**

12.    Land O'Lakes is engaged in a number of businesses, including the production and distribution of animal-milk replacer products.  Milk-replacer products are used to feed calves and other baby animals.

13.    Packerland is engaged in the production and distribution of whey products.

14.    Prior to May 15, 2012, Packerland was owned by Daniel and Scott.  Daniel served as Packerland's President. Scott served as Packerland's Vice President.

15.    Angela is married to Daniel.  Angela formerly served as Packerland's Treasurer.

16.    Mr. Hallet served as Packerland's Blend Master and Laboratory Manager.

17.    Dairy Directions formerly served as Packerland's sales agent.

**B.    Whey Protein Concentrate.**

18.    Whey Protein Concentrate ("WPC") is commonly used as an ingredient in animal-milk replacer products.

19.    WPC is the product obtained by the removal of non-protein constituents from whey.  The only ingredient in WPC is whey.

20.    Whey is a byproduct from the production of cheese.  WPC is produced by processing raw whey through an ultra-filtration and evaporation process, which condenses the protein.  Good quality WPC naturally contains over 30% protein.

21.    In or around September 2006, Packerland began supplying Land O'Lakes with a product identified as condensed WPC ("the Product").

22.    Land O'Lakes originally purchased the Product from Packerland through Dairy Directions.

3

23.     Dairy Directions acted as Packerland's agent for the sale of the Product to Land O'Lakes.

24.     Dairy Directions did not take title to or maintain an inventory of the Product.

25.     Packerland controlled the activities of Dairy Directions with respect to the sale of the Product to Land O'Lakes.

26.     Packerland determined the terms of the sale of the Product to Land O'Lakes, including price and delivery.

27.     Packerland made representations and warranties to Land O'Lakes regarding the Product through Dairy Directions.

28.     In May 2006, Packerland, through Dairy Directions, furnished Land O'Lakes with a specification for the Product.  Packerland's specification identified the Product as "WPC Con," which was an abbreviation for condensed Whey Protein Concentrate.  A true and correct copy of Packerland's specification is attached to this Complaint as Exhibit A.

29.     Packerland also made representations and warranties directly to Land O'Lakes regarding the Product while it was using Dairy Directions as its sales agent.

30.     In or around January 2012, Packerland ceased using Dairy Directions as its sales agent and began selling the Product directly to Land O'Lakes.

31.     In or around January 2012, Land O'Lakes and Packerland entered into a written Purchase Agreement.  A true and correct copy of the Purchase Agreement is attached to this Complaint as Exhibit B.

32.     Under the terms of the Purchase Agreement, Packerland agreed to supply Land O'Lakes with WPC made exclusively from fresh sweet whey.

4

33.     Under the terms of the Purchase Agreement, Packerland agreed that all WPC sold to Land O'Lakes would comply with an Ingredient Specification attached to the Purchase Agreement.  The Ingredient Specification had been previously provided to Packerland by Land O'Lakes during 2011.  Upon information and belief, a prior version of the Ingredient Specification was provided to Packerland by Dairy Directions in or around 2006.

34.     Under the terms of the Purchase Agreement, Packerland agreed that it would comply with all laws, rules and regulations relating to the production and storage of WPC.

35.     Under the terms of the Purchase Agreement, Packerland agreed that the WPC supplied to Land O'Lakes would comply with all applicable laws, rules and regulations.

36.     Along with each shipment of the Product, Packerland provided Land O'Lakes with a bill of lading that identified the Product as "WPC," which was an abbreviation for Whey Protein Concentrate.  A true and correct sample of one of Packerland's bills of lading is attached to this Complaint as Exhibit C.

37.     Packerland, through Dairy Directions, also sent Land O'Lakes invoices that identified the Product as "WPC," which was an abbreviation for Whey Protein Concentrate.  A true and correct sample of one of the invoices is attached to this Complaint as Exhibit D.

**C.     Adulteration of the Product.**

38.     Protein levels in milk and milk derivatives, like WPC, are determined by measuring nitrogen levels and calculating corresponding protein levels by using average nitrogen levels found in milk protein.  This manner of measuring protein is known as the Kjeldahl Method.

39. Calculation of protein levels in a milk-related product under the Kjeldahl Method can be artificially inflated by adding compounds containing high levels of nitrogen to the product. Such compounds are referred to as non-protein nitrogen.

40. One type of non-protein nitrogen is urea. Urea is a highly nitrogenous product produced from animal urine. It is used primarily in fertilizer.

41. Adding urea to a milk-related product can trick testing under the Kjeldahl Method into showing a higher protein level for the product.

42. Buyers generally purchase feed-grade WPC to make animal-milk replacer products. WPC contains a high level of protein, which is needed by calves and other baby animals. Buyers of feed-grade WPC rely upon the protein level of WPC to formulate and produce animal milk-replacer products. Adding non-protein nitrogen, like urea, to WPC results in an ingredient with an inferior level of true protein. WPC with a lower level of true protein is less valuable than WPC with a higher level of true protein.

43. Adding non-protein nitrogen, like urea, as an ingredient to commercial feed for animals with non-functioning rumen systems, like calves, as a source of equivalent crude protein constitutes a violation of law, including Wis. Stat. § 94.72(4) and (8)(a) and (b); Wis. Admin. Code §§ ATCP 42.52(1) and (2) and 42.54(1); Minn. Stat. § 25.37; and Minn. R. 1510.2180, Subp. 1.

44. Failing to disclose the addition of non-protein nitrogen, like urea, on the label of commercial feed or an ingredient for commercial feed also constitutes a violation of law, including Wis. Stat. § 94.72(2)(a)(7) and (8)(c); Wis. Admin. Code §§ ATCP 42.04(2)(e), 42.16(1)(a), 42.52(1) and (3) and 42.54(1); Minn. Stat. §§ 25.35 and 25.36; Minn. R. 1510.1943,

Subp. 1(E); Minn. R. 1510.1947, Subp. 6; Minn. R. 1510.2070, Subp. 5; and Minn. R. 1510.2130, Subp. 1.

45.     Including the word "protein" in the name of a commercial feed product that contains added non-protein nitrogen, like urea, is deemed to be misleading and deceptive and is prohibited by law, including Wis. Admin. Code § ATCP 42.06(4)(c)(1); and Minn. R. 1510.1947, Subp. 2(D).

46.     Unbeknownst to Land O'Lakes, Packerland added urea to the Product to increase its equivalent crude protein level.

47.     Upon information and belief, Mr. Hallet added urea to the Product after normal business hours to avoid detection by other Packerland employees.

48.     Mr. Hallet added urea to the Product at the direction of Daniel.

49.     Daniel, Scott and Angela were, at all pertinent times, aware that Mr. Hallet was adding urea to the Product.

**D.      Concealment of Adulteration.**

50.     Land O'Lakes experienced numerous problems with the Product, including the following:

       a.      Production stalls and problems;

       b.      Increased tailings (waste product);

       c.      Reduced production;

       d.      Ammonia-like odor and off flavor;

       e.      High levels of non-encapsulated fat;

       f.      Low solids;

       g.      High pH levels;

h. High non-protein nitrogen levels; and

i. High ash levels.

51. Land O'Lakes informed Packerland of the problems it was experiencing with the Product on numerous occasions.

52. In response to Land O'Lakes' complaints, Packerland's representatives, including Daniel, Scott, Angela and Mr. Hallet, claimed they did not know what was causing Land O'Lakes' problems or the origin of the increased non-protein nitrogen in the Product. They blamed the problems experienced by Land O'Lakes on a number of factors, including the following:

a. Poor-quality whey received from Packerland's suppliers;

b. Problems with Packerland's ultra-filtration equipment;

c. Problems with Packerland's evaporator equipment;

d. Problems with the piping in Packerland's facility;

e. Problems with the valves in Packerland's facility;

f. Problems with equipment maintenance; and

g. Cross-contamination with other products.

True and correct copies of electronic-mail messages and other documents evidencing some of the statements made by Daniel, Scott, Angela and Mr. Hallet are collectively attached to this Complaint as Exhibit E.

53. Daniel, Scott, Angela, Mr. Hallet and Packerland knew that the problems Land O'Lakes was experiencing with the Product were caused by the urea added to the Product and deliberately concealed this fact from Land O'Lakes. Daniel, Scott, Angela, Mr. Hallet and

Packerland also knew that the origin of the increased non-protein nitrogen in the Product was the urea added by Mr. Hallet.

54.     Daniel, Scott, Angela, Mr. Hallet and Packerland failed to disclose and actively concealed from Land O'Lakes that Packerland was adding urea to the Product.

55.     Upon information and belief, Packerland also sold product contaminated with urea, which it claimed was WPC, to other customers, including Milk Specialties Global Nutrition ("Milk Specialties") and Merrick's, Inc. ("Merrick's").

56.     Upon information and belief, Packerland similarly failed to disclose to and actively concealed from Milk Specialties, Merrick's and other customers that it was adding urea to their products.

**E.     Discovery of Adulteration.**

57.     In May 2012, Packerland was sold to Packerland Holding pursuant to a Stock Purchase Agreement for approximately $23.5 million.

58.     Under the terms of the Stock Purchase Agreement, Packerland Holding assumed Packerland's liabilities.

59.     Daniel, Scott, Angela and Mr. Hallet worked for Packerland Holding after its acquisition of Packerland.

60.     Daniel, Scott, Angela and Mr. Hallet continued their fraudulent scheme of adding urea to the Product after the acquisition of Packerland by Packerland Holding.

61.     After Packerland Holding's acquisition of Packerland, Daniel, Scott, Angela and Mr. Hallet continued to conceal that urea was being added to the Product.

62.     Upon information and belief, in or around December 2012, Packerland Holding discovered that Daniel, Scott, Angela and Mr. Hallet were engaged in a fraudulent scheme to add

9

urea to the Product and similar products sold to other customers by Packerland and Packerland Holding.

63.     On or about December 7, 2012, Packerland Holding terminated the employment of Daniel, Scott and Angela based upon their fraudulent scheme.

64.     Packerland Holding also threatened to sue Daniel, Scott and Angela and provided them with a copy of a draft Verified Complaint for Injunctive and Other Relief ("Verified Complaint"). A copy of the Verified Complaint is attached to this Complaint as Exhibit F.

65.     In its Verified Complaint, Packerland Holding made a number of allegations against Daniel, Scott and Angela, including the following:

    a.     Packerland Holding alleged that Packerland agreed to produce and sell WPC to Land O'Lakes that "would not contain non-protein nitrogen in excess of what naturally occurs in whey." (Verified Complaint ¶ 11).

    b.     Packerland Holding alleged that the contract between Land O'Lakes and Packerland required the WPC supplied to Land O'Lakes to be "made from whey exclusively, not chemically-derived non-protein nitrogen like urea." (Verified Complaint ¶ 11).

    c.     Packerland Holding alleged that Daniel, Scott, Angela and Mr. Hallet were secretly adding urea to the Product and similar products sold to other customers by Packerland and Packerland Holding. (Verified Complaint ¶ 38).

    d.     Packerland Holding alleged that adding urea to the Product constituted a breach of the contract between Land O'Lakes and Packerland. (Verified Complaint ¶ 40).

66.     Several weeks later, on or about December 28, 2012, Daniel, Scott, Angela and Scott's wife, Elizabeth Ratajczak ("Elizabeth"), entered into a Settlement Agreement with Packerland, Packerland Holding and others under which they agreed, among other things, to pay

10

Packerland Holding the sum of $9,766,222.94 to settle the claims referenced in the Verified Complaint.  A copy of the Settlement Agreement is attached to this Complaint as Exhibit G.

67.     In January 2013, Daniel, Scott, Angela and Elizabeth filed an insurance-coverage lawsuit against Beazley Solutions, Ltd. ("Beazley"), the insurance company that insured the representations and warranties made by Daniel and Scott in the Stock Purchase Agreement.  In the insurance-coverage lawsuit, Daniel, Scott, Angela and Elizabeth sought reimbursement for the settlement payment made to Packerland Holding.

68.     In or around September 2014, Land O'Lakes learned from recently unsealed documents filed in the insurance-coverage case that Packerland and Packerland Holding had been adding urea to the Product.

69.     On October 8, 2014, Land O'Lakes sent a letter to Packerland and Packerland Holding providing them with notice of a claim and breach of their express and implied warranties.  A true and correct copy of Land O'Lakes' October 8, 2014, letter is attached to this Complaint as Exhibit H.

70.     On October 28, 2014, Land O'Lakes sent a letter to Dairy Directions providing it with notice of a claim and breach of its express and implied warranties.  A true and correct copy of Land O'Lakes' October 28, 2014, letter is attached to this Complaint as Exhibit I.

71.     From 2006 through 2012, Land O'Lakes paid over $15 million for the Product without knowing that the Product was non-conforming and adulterated with urea.  Because the Product was adulterated with urea, it was not merchantable or fit for use by Land O'Lakes and had no value.

72.     Land O'Lakes has satisfied all conditions to the commencement and prosecution of this action.

## COUNT I
## BREACH OF CONTRACT

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

73. Under the terms of the Purchase Agreement, Packerland contracted and agreed as follows:

        a. To supply Land O'Lakes with WPC;

        b. To supply Land O'Lakes with WPC made exclusively from fresh sweet whey;

        c. To supply Land O'Lakes with WPC that complied, in all material respects, with the requirements of the Ingredient Specification attached to the Purchase Agreement;

        d. To comply with all laws and governmental rules and regulations applicable to the production, storage and delivery of WPC; and

        e. To supply Land O'Lakes with WPC that complied with all applicable federal, state and local laws and regulations.

74. Packerland Holding assumed Packerland's contractual obligations to Land O'Lakes under the Purchase Agreement and supplied the Product to Land O'Lakes pursuant to the terms of the Purchase Agreement.

75. Packerland and Packerland Holding materially breached their contractual obligations to Land O'Lakes under the Purchase Agreement in a number of ways, including the following:

        a. By adulterating the Product with urea;

        b. By supplying Land O'Lakes with adulterated product that did not qualify as WPC;

c. By supplying Land O'Lakes with product that was not made exclusively from fresh sweet whey;

d. By supplying Land O'Lakes with product that did not comply with the requirements of the Ingredient Specification;

e. By failing to comply with all laws and governmental rules and regulations applicable to the production, storage and delivery of WPC; and

f. By failing to provide Land O'Lakes with WPC that complied with all applicable federal, state and local laws and regulations.

76. As a direct and proximate result of the breaches of contract perpetrated by Packerland and Packerland Holding, Land O'Lakes has incurred damages in excess of $5 million.

77. Land O'Lakes is entitled to recover its damages from Packerland and Packerland Holding, jointly and severally.

78. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT II
## BREACH OF EXPRESS WARRANTY

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

79. Packerland, Dairy Directions and Packerland Holding made a number of express warranties to Land O'Lakes, including the following:

a. That the Product was WPC; and

b. That the Product was produced exclusively from whey.

80. Dairy Directions made the aforementioned express warranties to Land O'Lakes as the agent for Packerland. Packerland also made the aforementioned express warranties directly to Land O'Lakes while Dairy Directions served as its agent. Consequently, there was privity of contract between Land O'Lakes and Packerland with respect to sales of the Product made to Land O'Lakes while Dairy Directions served as Packerland's agent.

81. In the alternative, Dairy Directions made the aforementioned express warranties to Land O'Lakes as the seller of the Product.

82. Packerland and Packerland Holding made the following additional express warranties to Land O'Lakes:

a. That the Product complied with the requirements of Land O'Lakes' Ingredient Specification.

b. That they complied with all laws and governmental rules and regulations applicable to the production, storage and delivery of WPC in producing and selling the Product; and

c. That the Product complied with all federal, state and local laws and regulations applicable to WPC.

83. Land O'Lakes relied upon the express warranties made by Packerland, Dairy Directions and Packerland Holding.

84. The express warranties made by Packerland, Dairy Directions and Packerland Holding became part of the basis of the bargain between Land O'Lakes, on the one hand, and Packerland, Dairy Directions and Packerland Holding, on the other hand.

85. Packerland, Dairy Directions and Packerland Holding breached their express

14

warranties to Land O'Lakes in a number of ways, including the following:

   a.   By supplying Land O'Lakes with product that did not qualify as WPC; and

   b.   By supplying Land O'Lakes with product that was not made exclusively from whey.

86.   Packerland and Packerland Holding breached their additional express warranties to Land O'Lakes in a number of ways, including the following:

   a.   By adding urea to the Product;

   b.   By supplying Land O'Lakes with product that did not comply with the requirements of the Ingredient Specification;

   c.   By failing to comply with all laws and governmental rules and regulations applicable to the production, storage and delivery of WPC in producing and selling the Product; and

   d.   By failing to provide Land O'Lakes with product that complied with all applicable federal, state and local laws and regulations applicable to WPC.

87.   Land O'Lakes timely provided Packerland, Dairy Directions and Packerland Holding with notice of breach of their express warranties.

88.   As a direct and proximate result of the breaches of express warranty perpetrated by Packerland, Dairy Directions and Packerland Holding, Land O'Lakes has incurred damages in excess of $10 million.

89.   Land O'Lakes is entitled to recover the damages it incurred prior to January 1, 2012, from Packerland. In the alternative, Land O'Lakes is entitled to recover those damages from Dairy Directions.

90. Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liability to Land O'Lakes for breach of express warranties.

91. Land O'Lakes is entitled to recover damages from Packerland and Packerland Holding, jointly and severally.

92. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

93. Packerland, Dairy Directions and Packerland Holding qualify as merchants with respect to the Product and WPC within the meaning of Wis. Stat. § 402.104(3).

94. As merchants, Packerland, Dairy Directions and Packerland Holding impliedly warranted that the Product would be merchantable under Wis. Stat. § 402.314.

95. Dairy Directions made the aforementioned implied warranty of merchantability to Land O'Lakes as the agent for Packerland. Packerland also made the aforementioned implied warranty of merchantability directly to Land O'Lakes while Dairy Directions served as its agent. Consequently, there was privity of contract between Land O'Lakes and Packerland with respect to sales of the Product made to Land O'Lakes while Dairy Directions served as Packerland's agent.

96. In the alternative, Dairy Directions made the aforementioned implied warranty of merchantability to Land O'Lakes as the seller of the Product.

97. The Product was not merchantable.

98. Land O'Lakes timely provided Packerland, Dairy Directions and Packerland Holding with notice of breach of their implied warranties of merchantability.

99. As a direct and proximate result of the breaches of the implied warranty of merchantability perpetrated by Packerland, Dairy Directions and Packerland Holding, Land O'Lakes has incurred damages in excess of $10 million.

100. Land O'Lakes is entitled to recover the damages it incurred prior to January 1, 2012, from Packerland. In the alternative, Land O'Lakes is entitled to recover those damages from Dairy Directions.

101. Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liability to Land O'Lakes for breach of the implied warranty of merchantability.

102. Land O'Lakes is entitled to recover damages from Packerland and Packerland Holding, jointly and severally.

103. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

104. Packerland, Dairy Directions and Packerland Holding knew or had reason to know that Land O'Lakes was using the Product as an ingredient in animal-milk replacer products.

17

105.     Packerland, Dairy Directions and Packerland Holding knew or had reason to know that Land O'Lakes was relying on their skill, judgment and expertise to furnish suitable WPC to Land O'Lakes.

106.     Land O'Lakes relied upon the skill, judgment and expertise of Packerland, Dairy Directions and Packerland Holding to furnish suitable WPC to Land O'Lakes.

107.     Under Wis. Stat. § 402.315, Packerland, Dairy Directions and Packerland Holding impliedly warranted that the Product would be fit for use as an ingredient in animal-milk replacer products.

108.     Dairy Directions made the aforementioned implied warranty of fitness to Land O'Lakes as the agent for Packerland.  Packerland also made the aforementioned implied warranty of fitness directly to Land O'Lakes while Dairy Directions served as its agent. Consequently, there was privity of contract between Land O'Lakes and Packerland with respect to sales of the Product made to Land O'Lakes while Dairy Directions served as Packerland's agent.

109.     In the alternative, Dairy Directions made the aforementioned implied warranty of fitness to Land O'Lakes as the seller of the Product.

110.     The Product was not fit for use as an ingredient in animal-milk replacer products.

111.     Land O'Lakes timely provided Packerland, Dairy Directions and Packerland Holding with notice of breach of their implied warranty of fitness for a particular purpose.

112.     As a direct and proximate result of the breaches of the implied warranty of fitness for a particular purpose perpetrated by Packerland, Dairy Directions and Packerland Holding, Land O'Lakes has incurred damages in excess of $10 million.

113.    Land O'Lakes is entitled to recover the damages it incurred prior to January 1, 2012, from Packerland.  In the alternative, Land O'Lakes is entitled to recover those damages from Dairy Directions.

114.    Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liability to Land O'Lakes for breach of the implied warranty of merchantability.

115.    Land O'Lakes is entitled to recover damages from Packerland, Dairy Directions and Packerland Holding, jointly and severally.

116.    Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT V
## FRAUDULENT MISREPRESENTATION

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

117.    Daniel, Scott, Angela, Mr. Hallet and Packerland made the following representations of fact to Land O'Lakes:

a.    Packerland represented to Land O'Lakes in hundreds of bills of lading from September 2006 through December 2012 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

b.    Packerland represented to Land O'Lakes through its agent, Dairy Directions, in hundreds of invoices from September 2006 through December 2011 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

c. Daniel, Scott, Angela, Mr. Hallet and Packerland represented to Land O'Lakes that they did not know the cause of the problems experienced by Land O'Lakes in using the Product or the origin of the increased non-protein nitrogen in the Product; and

d. Daniel, Scott, Angela, Mr. Hallet and Packerland represented to Land O'Lakes that the problems Land O'Lakes was experiencing with the Product were caused by a number of factors, including, poor-quality whey received from Packerland's suppliers, problems with Packerland's ultra-filtration equipment, problems with Packerland's evaporator equipment, problems with piping in Packerland's facility, problems with valves in Packerland's facility, problems with equipment maintenance and cross-contamination with other products.

118. The representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland were materially false and misleading at the time they were made to Land O'Lakes.

119. Daniel, Scott, Angela, Mr. Hallet and Packerland made the representations knowing them to be untrue or recklessly without caring whether the representations were true or false.

120. Daniel, Scott, Angela, Mr. Hallet and Packerland made the representations with the intent to deceive and defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the Product from Packerland.

121. Land O'Lakes believed the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland were true.

122. Land O'Lakes relied to its detriment upon the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland by purchasing and continuing to purchase the Product from Packerland.

123. Land O'Lakes' reliance on the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland was justified and reasonable under the circumstances.

124. As a direct and proximate result of the fraudulent misrepresentations made by Daniel, Scott, Angela, Mr. Hallet and Packerland, Land O'Lakes has incurred damages in excess of $10 million.

125. Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liability to Land O'Lakes for fraudulent misrepresentation.

126. Land O'Lakes is entitled to recover its damages from Packerland, Packerland Holding, Daniel, Scott, Angela and Mr. Hallet, jointly and severally.

127. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT VI
## STRICT-LIABILITY FRAUD

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

128. Daniel, Scott, Angela, Mr. Hallet and Packerland made the following representations of fact to Land O'Lakes:

a. Packerland represented to Land O'Lakes in hundreds of bills of lading from September 2006 through December 2012 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

b. Packerland represented to Land O'Lakes through its agent, Dairy Directions, in hundreds of invoices from September 2006 through December 2011 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

21

c. Daniel, Scott, Angela, Mr. Hallet and Packerland represented to Land O'Lakes that they did not know the cause of the problems experienced by Land O'Lakes in using the Product or the origin of the increased non-protein nitrogen in the Product; and

d. Daniel, Scott, Angela, Mr. Hallet and Packerland represented to Land O'Lakes that the problems Land O'Lakes was experiencing with the Product were caused by a number of factors, including, poor-quality whey received from Packerland's suppliers, problems with Packerland's ultra-filtration equipment, problems with Packerland's evaporator equipment, problems with piping in Packerland's facility, problems with valves in Packerland's facility, problems with equipment maintenance and cross-contamination with other products.

129. The representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland were materially false and misleading at the time they were made to Land O'Lakes.

130. Daniel, Scott, Angela, Mr. Hallet and Packerland made the representations with personal knowledge of the falsity of the representations or were so situated that they necessarily ought to have known that the representations were false.

131. Daniel, Scott, Angela, Mr. Hallet and Packerland had an economic interest in selling the Product to Land O'Lakes.

132. Daniel, Scott, Angela, Mr. Hallet and Packerland made the representations with the intent to deceive and defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the Product from Packerland.

133. Land O'Lakes believed the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland were true.

134. Land O'Lakes relied to its detriment upon the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland by purchasing and continuing to purchase the Product from Packerland.

135. Land O'Lakes' reliance on the representations made by Daniel, Scott, Angela, Mr. Hallet and Packerland was justified and reasonable under the circumstances.

136. As a direct and proximate result of the fraudulent misrepresentations made by Daniel, Scott, Angela, Mr. Hallet and Packerland, Land O'Lakes has incurred damages in excess of $10 million.

137. Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liability to Land O'Lakes for strict-liability fraud.

138. Land O'Lakes is entitled to recover its damages from Packerland, Packerland Holding, Daniel, Scott, Angela and Mr. Hallet, jointly and severally.

139. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT VII
## FRAUDULENT CONCEALMENT

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

140. Daniel, Scott, Angela, Mr. Hallet and Packerland failed to disclose the following facts to Land O'Lakes:

      a.      That the Product was adulterated with urea;

      b.      That the Product did not qualify as WPC; and

      c.      That the problems experienced by Land O'Lakes with the Product were caused by the adulteration of the Product with urea.

141.    Daniel, Scott, Angela, Mr. Hallet and Packerland had a duty to disclose the foregoing facts to Land O'Lakes for a number of reasons, including the following:

a.    Daniel, Scott, Angela, Mr. Hallet and Packerland had a duty to disclose the fact that the Product contained urea to Land O'Lakes under Wis. Stat. § 94.72(2)(a)(7) and (8)(c); Wis. Admin. Code §§ ATCP 42.04(2)(e), 42.16(1)(a), 42.52(1) and (3) and 42.54(1); Minn. Stat. §§ 25.35 and 25.36; Minn. R. 1510.1943, Subp. 1(E); Minn. R. 1510.1947, Subp. 6; Minn. R. 1510.2070, Subp. 5; and Minn. R. 1510.2130, Subp. 1.

b.    Daniel, Scott, Angela, Mr. Hallet and Packerland had a duty to disclose the foregoing facts to Land O'Lakes because: (1) the facts were material to Land O'Lakes' decision to purchase the Product from Packerland and Packerland Holding; (2) Daniel, Scott, Angela, Mr. Hallet and Packerland knew that Land O'Lakes was purchasing the Product from Packerland and Packerland Holding without knowing the foregoing facts and based upon the assumption that the Product was pure and not adulterated with urea; (3) the foregoing facts were peculiarly and exclusively within the knowledge of Daniel, Scott, Angela, Mr. Hallet and Packerland and Land O'Lakes could not reasonably be expected to discover those facts; and (4) based upon the objective circumstances, Land O'Lakes would reasonably expect disclosure of the foregoing facts by Daniel, Scott, Angela, Mr. Hallet and Packerland.

c.    Daniel, Scott, Angela, Mr. Hallet and Packerland had to duty to disclose the foregoing facts to Land O'Lakes to prevent representations that they previously made to Land O'Lakes from being misleading, including representations set forth in bills of lading and invoices, representations contained in and evidenced by the documents attached to this Complaint as Exhibit E and oral representations made by Daniel, Scott, Angela, Mr. Hallet and

Packerland regarding the Product, the cause of the problems experienced by Land O'Lakes with the Product and the origin of the increased non-protein nitrogen in the Product.

d. Packerland had a duty to disclose the foregoing facts to Land O'Lakes under the terms of the Purchase Agreement.

142. The foregoing facts would have been material and important to Land O'Lakes' decision to purchase and continue purchasing the Product from Packerland and Packerland Holding. If Land O'Lakes had known any of the foregoing facts, it would have discontinued purchasing the Product from Packerland and Packerland Holding.

143. Daniel, Scott, Angela, Mr. Hallet and Packerland deliberately concealed the foregoing facts from Land O'Lakes with the intent and for the purpose of deceiving Land O'Lakes and inducing Land O'Lakes to purchase and continue purchasing the Product.

144. As a direct and proximate result of the fraudulent concealment perpetrated by Daniel, Scott, Angela, Mr. Hallet and Packerland, Land O'Lakes has incurred damages in excess of $10 million.

145. Packerland Holding assumed all of Packerland's liabilities to Land O'Lakes, including Packerland's liabilities to Land O'Lakes for fraudulent concealment.

146. Land O'Lakes is entitled to recover its damages from Packerland, Packerland Holding, Daniel, Scott, Angela and Mr. Hallet, jointly and severally.

147. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states

and alleges as follows:

148.    Packerland Holding and Dairy Directions owed Land O'Lakes a duty to exercise reasonable care in making representations to Land O'Lakes regarding the Product.

149.    Packerland Holding and Dairy Directions failed to exercise reasonable care in representing to Land O'Lakes in invoices, bills of lading and other communications that the Product constituted "WPC," which was an abbreviation for Whey Protein Concentrate.

150.    Land O'Lakes believed the representations made by Packerland Holding and Dairy Directions.

151.    Land O'Lakes relied upon the representations made by Packerland Holding and Dairy Directions by purchasing and continuing to purchase the Product from Packerland and Packerland Holding.

152.    Land O'Lakes' reliance on the representations made by Packerland Holding and Dairy Directions was justified and reasonable under the circumstances.

153.    As a direct and proximate result of the negligent misrepresentations made by Packerland Holding and Dairy Directions, Land O'Lakes has incurred damages in excess of $10 million.

154.    Land O'Lakes is entitled to recover its damages from Packerland Holding and Dairy Directions.

155.    Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT IX
## VIOLATION OF THE FEDERAL RACKETEER INFLUENCED
## AND CORRUPT ORGANIZATIONS ACT

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

156.    Packerland is an enterprise engaged in interstate commerce and/or activities that affect interstate commerce within the meaning of 18 U.S.C. § 1961(4).

157.    Daniel, Scott, Angela and Mr. Hallet controlled, operated and participated in the conduct of the Packerland enterprise.

158.    The addition of urea by Daniel, Scott, Angela and Mr. Hallet to the Product and similar products sold to other customers, including Milk Specialties and Merrick's, constituted a scheme to defraud within the meaning of 18 U.S.C. § 1341.

159.    Daniel, Scott, Angela and Mr. Hallet used or caused to be used the mails of the United States for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott, Angela and Mr. Hallet used or caused to be used the mails of the United States to send false and fraudulent invoices, directly and indirectly, to Land O'Lakes, Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

160.    Daniel, Scott, Angela and Mr. Hallet also deposited or caused to be deposited matters and things to be sent or delivered by private or commercial interstate carriers for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott, Angela and Mr. Hallet deposited or caused to be deposited false and fraudulent bills of lading for the Product to be sent or delivered by private or commercial interstate carriers

Case 1:14-cv-01388-WCG   Filed 11/03/14   Page 27 of 35   Document 1

from Luxemburg, Wisconsin, to Land O'Lakes' facility in Browerville, Minnesota, for the purpose of executing their scheme to defraud.

161.    As evidenced, in part, by the documents attached to this Complaint as Exhibit E, Daniel, Scott, Angela and Mr. Hallet also used or caused to be used interstate wires, including telephone and electronic mail, for the purpose of executing and concealing their scheme to defraud against Land O'Lakes in violation of 18 U.S.C. § 1343.   Upon information and belief, Daniel, Scott, Angela and Mr. Hallet also used or caused to be used interstate wires for the purpose of executing and concealing their scheme to defraud against other customers, including Milk Specialties and Merrick's.

162.    Daniel, Scott, Angela and Mr. Hallet perpetrated hundreds of violations of 18 U.S.C. § 1341 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

163.    Daniel Scott, Angela and Mr. Hallet perpetrated numerous violations of 18 U.S.C. § 1343 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

164.    The numerous violations of 18 U.S.C. §§ 1341 and 1343 perpetrated by Daniel, Scott and Angela against Land O'Lakes, Milk Specialties, Merrick's and other customers for a period of over six years constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

165.    Daniel, Scott, Angela and Mr. Hallet used income derived, directly or indirectly, from the aforementioned  pattern of racketeering activity to operate Packerland in violation of 18 U.S.C. § 1962(a).   For example, Daniel, Scott and Angela used proceeds generated by the

aforementioned pattern of racketeering activity to purchase urea to add to the Product and similar products sold to other customers, including Milk Specialties and Merrick's.

166.    Daniel, Scott, Angela and Mr. Hallet controlled, conducted and participated in, directly or indirectly, the affairs of Packerland through the aforementioned pattern of racketeering in violation of 18 U.S.C. § 1962(c).

167.    Daniel, Scott, Angela and Mr. Hallet conspired and colluded with each other to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

168.    Land O'Lakes has incurred damages as a direct and proximate cause of the violations of 18 U.S.C. § 1962(a) and (c) perpetrated by Daniel, Scott, Angela and Mr. Hallet in excess of $10 million.

169.    Land O'Lakes is entitled to recover three times the amount of its damages, plus its attorney fees, costs and disbursements from Daniel, Scott, Angela and Mr. Hallet, jointly and severally, under 18 U.S.C. § 1964(c).

## COUNT X
## VIOLATION OF THE WISCONSIN ORGANIZED CRIME
## CONTROL ACT

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

170.    Packerland is an enterprise within the meaning of Wis. Stat. § 946.82(2).

171.    Daniel, Scott, Angela and Mr. Hallet controlled, operated and participated in the conduct of the Packerland enterprise.

172.    The addition of urea by Daniel, Scott, Angela and Mr. Hallet to the Product and similar products sold to other customers, including Milk Specialties and Merrick's, constituted a scheme to defraud within the meaning of 18 U.S.C. § 1341.

173. Daniel, Scott, Angela and Mr. Hallet used or caused to be used the mails of the United States for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341. In particular, Daniel, Scott, Angela and Mr. Hallet used or caused to be used the mails of the United States to send false and fraudulent invoices, directly and indirectly, to Land O'Lakes, Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

174. Daniel, Scott, Angela and Mr. Hallet also deposited or caused to be deposited matters and things to be sent or delivered by private or commercial interstate carriers for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341. In particular, Daniel, Scott, Angela and Mr. Hallet deposited or caused to be deposited false and fraudulent bills of lading for the Product to be sent or delivered by private or commercial interstate carriers from Luxemburg, Wisconsin, to Land O'Lakes' facility in Browerville, Minnesota, for the purpose of executing their scheme to defraud.

175. As evidenced, in part, by the documents attached to this Complaint as Exhibit E, Daniel, Scott, Angela and Mr. Hallet also used or caused to be used interstate wires, including telephone and electronic mail, for the purpose of executing and concealing their scheme to defraud against Land O'Lakes in violation of 18 U.S.C. § 1343. Upon information and belief, Daniel, Scott, Angela and Mr. Hallet also used or caused to be used interstate wires for the purpose of executing and concealing their scheme to defraud against other customers, including Milk Specialties and Merrick's.

176. Daniel, Scott, Angela and Mr. Hallet perpetrated hundreds of violations of 18 U.S.C. § 1341 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

177. Daniel Scott, Angela and Mr. Hallet perpetrated numerous violations of 18 U.S.C. § 1343 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

178. The numerous violations of 18 U.S.C. §§ 1341 and 1343 perpetrated by Daniel, Scott and Angela against Land O'Lakes, Milk Specialties, Merrick's and other customers for a period of over six years constitute a pattern of racketeering activity within the meaning of Wis. Stat. § 946.82(3).

179. Daniel, Scott and Angela used or invested, directly or indirectly, proceeds generated by the aforementioned pattern of racketeering activity to operate Packerland in violation of Wis. Stat. § 946.83(1). For example, Daniel, Scott and Angela used proceeds generated by the aforementioned pattern of racketeering activity to purchase urea to add to the Product and similar products sold to other customers, including Milk Specialties and Merrick's.

180. Daniel, Scott and Angela controlled, conducted and participated in, directly or indirectly, the affairs of Packerland through the aforementioned pattern of racketeering in violation of Wis. Stat. § 946.83(3).

181. Land O'Lakes has incurred damages as a direct and proximate cause of the violations of Wis. Stat. § 946.83(1) and (3) perpetrated by Daniel, Scott and Angela in excess of $10 million.

182. Land O'Lakes is entitled to recover two times the amount of its damages, plus its attorney fees, costs and disbursements from Daniel, Scott and Angela, jointly and severally, under Wis. Stat. § 946.87(4).

**COUNT XI**
**RESPONDEAT SUPERIOR**
**(PACKERLAND)**

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

183.    During the time they were employed by Packerland, Daniel, Scott, Angela and Mr. Hallet were acting within the course and scope of their employment in perpetrating the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint.

184.    Because Daniel, Scott, Angela and Mr. Hallet were acting within the course and scope of their employment, Packerland is vicariously liable for the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering perpetrated by Daniel, Scott, Angela and Mr. Hallet under the doctrine of respondeat superior.

**COUNT XII**
**RESPONDEAT SUPERIOR**
**(PACKERLAND HOLDING)**

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

185.    During the time they were employed by Packerland Holding, Daniel, Scott, Angela and Mr. Hallet were acting within the course and scope of their employment in perpetrating the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint.

186.    Because Daniel, Scott, Angela and Mr. Hallet were acting within the course and scope of their employment, Packerland Holding is vicariously liable for the fraudulent

32

misrepresentation, strict-liability fraud, fraudulent concealment and racketeering perpetrated by Daniel, Scott, Angela and Mr. Hallet under the doctrine of respondeat superior.

## COUNT XIII
## CONSPIRACY TO COMMIT FRAUDULENT MISREPRESENTATION, STRICT-LIABILITY FRAUD, FRAUDULENT CONCEALMENT AND RACKETEERING

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

187.    Daniel, Scott, Angela and Mr. Hallet conspired and colluded with each other to perpetrate the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint.

188.    Daniel, Scott, Angela and Mr. Hallet committed unlawful and overt acts in furtherance of their conspiracy and collusion.

189.    As a direct and proximate result of the conspiracy and collusion of Daniel, Scott, Angela and Mr. Hallet to perpetrate the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint, Land O'Lakes has incurred damages in excess of $10 million.

190.    Based upon their conspiracy, Daniel, Scott, Angela and Mr. Hallet are jointly and severally liable for all of the damages incurred by Land O'Lakes.

## COUNT XIV
## AIDING AND ABETTING

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states

and alleges as follows:

191.    Daniel, Scott, Angela and Mr. Hallet knew that the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint constituted breaches of duties and obligations owed to Land O'Lakes.

192.    Daniel, Scott, Angela and Mr. Hallet consciously and intentionally provided each other with substantial assistance and encouragement for the purpose and with the intent of perpetrating the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint.

193.    As a result of their aiding and abetting, Daniel, Scott, Angela and Mr. Hallet are jointly and severally liable for all of the damages incurred by Land O'Lakes.

## COUNT XV
## PUNITIVE DAMAGES

Land O'Lakes restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

194.    Daniel, Scott, Angela, Mr. Hallet and Packerland acted maliciously and with intentional disregard of Land O'Lakes' rights by engaging in the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Complaint.

195.    Accordingly, in addition to compensatory damages, Land O'Lakes is entitled to recover punitive damages from Daniel, Scott, Angela, Mr. Hallet and Packerland in an amount to be determined at trial.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Land O'Lakes hereby demands a trial by jury.

**WHEREFORE**, Land O'Lakes respectfully prays for this Court's judgment as follows:

1.      Awarding Land O'Lakes compensatory damages in an amount to be proved at trial in excess of $10 million;

2.      Holding Packerland, Packerland Holding Daniel, Scott, Angela and Mr. Hallet jointly and severally liable the damages incurred by Land O'Lakes;

3.      Awarding Land O'Lakes punitive damages against Daniel, Scott, Angela, Mr. Hallet and Packerland, jointly and severally, in an amount to be determined at trial;

4.      Awarding Land O'Lakes prejudgment interest;

5.      Awarding Land O'Lakes all of its attorney fees, costs and disbursements; and

6.      Granting Land O'Lakes all such other and further relief as the Court deems just and equitable under the circumstances.

LAND O'LAKES, INC.


Dated: November 3, 2014                 By:   s/Jonathan C. Miesen
                                              Jonathan C. Miesen
                                              Associate General Counsel-Litigation

                                        4001 Lexington Avenue North
                                        Arden Hills, Minnesota 55126
                                        Telephone:   (651) 375-5985
                                        Facsimile:    (651) 234-0535
                                        E-Mail:  jcmiesen@landolakes.com

                                        and

                                        Eric A. Bartsch
                                        Stoel Rives LLP
                                        33 South Sixth Street
                                        Suite 4200
                                        Minneapolis, MN 55402
                                        Telephone:   (612) 373-8800
                                        Facsimile:    (612) 373-8881
                                        Email:    eabartsch@stoel.com

                                        Attorneys for Plaintiff