UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

Land O'Lakes, Inc.,

        Plaintiff,

v.

Daniel J. Ratajczak, Jr., Scott A. Ratajczak,
Angela R. Ratajczak, Daniel J. Ratajczak, Jr.
and Angela R. Ratajczak Revocable Trust
Dated April 25, 2012, John Doe and ABC
Company,

        Defendants.

Case No. 1:14-CV-01388-WCG

**SECOND AMENDED COMPLAINT**
**(JURY TRIAL DEMANDED)**

---

Rural Mutual Insurance Co.,

        Intervention Plaintiff,

v.

Land O'Lakes, Inc., Daniel J. Ratajczak, Jr.,
Scott A. Ratajczak, Angela R. Ratajczak,
First Mercury Insurance Co., Indian Harbor
Insurance Co. and Regent Insurance Co.,

        Intervention Defendants.

---

First Mercury Insurance Co.,

        Intervention Plaintiff,

v.

Land O'Lakes, Inc., Daniel J. Ratajczak, Jr.,
Scott A. Ratajczak, Angela R. Ratajczak,
Rural Mutual Insurance Co., Indian Harbor
Insurance Co. and Regent Insurance Co.,

        Intervention Defendants.

---

Indian Harbor Insurance Co.,

                Intervention Plaintiff,

v.

Land O'Lakes, Inc., Daniel J. Ratajczak, Jr., Scott A. Ratajczak, Angela R. Ratajczak, Rural Mutual Insurance Co., First Mercury Insurance Co. and Regent Insurance Co.,

                Intervention Defendants.

---

Regent Insurance Co.,

                Intervention Plaintiff,

v.

Land O'Lakes, Inc., Daniel J. Ratajczak, Jr., Scott A. Ratajczak, Angela R. Ratajczak, Rural Mutual Insurance Co., First Mercury Insurance Co. and Indian Harbor Insurance Co.,

                Intervention Defendants.

---

For its Second Amended Complaint against Defendants, Plaintiff states and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Land O'Lakes, Inc. ("Land O'Lakes") is a Minnesota cooperative corporation with its principal place of business located in Arden Hills, Minnesota. Under 28 U.S.C. § 1332(c)(1), Land O'Lakes is a citizen of the State of Minnesota.

2.      Defendant Daniel J. Ratajczak, Jr. ("Daniel") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

2

3.      Defendant Scott A. Ratajczak ("Scott") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

4.      Defendant Angela R. Ratajczak ("Angela") is a citizen of the State of Wisconsin currently residing, upon information and belief, in Luxemburg, Wisconsin.

5.      Defendant Daniel J. Ratajczak, Jr. and Angela R. Ratajczak Revocable Trust Dated April 25, 2012 ("Ratajczak Trust") is a trust formed under the laws of the State of Wisconsin.  Ratajczak Trust is a citizen of the State of Wisconsin.

6.      Defendants John Doe and ABC Company are presently unascertained persons and entities who and which conspired with, aided and abetted or otherwise assisted the named Defendants in perpetrating the misconduct alleged in this Second Amended Complaint.  Upon ascertaining their identities, Land O'Lakes will duly join these persons and entities as additional defendants in this case.

7.      The amount in controversy in this case, exclusive of costs and interest, exceeds the sum of $75,000.00.

8.      The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) based upon the complete diversity of citizenship between Land O'Lakes, on the one hand, and Daniel, Scott, Angela and Ratajczak Trust, on the other hand, and the fact that the amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

**FACTS COMMON TO ALL COUNTS**

**A.      Background.**

10.      Land O'Lakes is engaged in a number of businesses, including the production and distribution of animal-milk replacer products.  Milk-replacer products are used to feed calves and other baby animals.

11.      Daniel, Scott and Angela formerly operated a company known as Packerland Whey Products, Inc. ("Packerland").  Packerland is engaged in the production and distribution of whey products.

12.      Prior to May 15, 2012, Packerland was owned by Daniel and Scott.  Daniel served as Packerland's President. Scott served as Packerland's Vice President.

13.      Angela is married to Daniel.  Angela formerly served as Packerland's Treasurer, office manager and bookkeeper.

**B.      Whey Protein Concentrate.**

14.      Whey Protein Concentrate ("WPC") is commonly used as an ingredient in animal-milk replacer products.

15.      WPC is the product obtained by the removal of non-protein constituents from whey.  The only ingredient in WPC is whey.

16.      Whey is a byproduct from the production of cheese.  WPC is produced by processing raw whey through an ultra-filtration and evaporation process, which condenses the protein.  Good quality WPC naturally contains over 30% protein.

17.      In or around September 2006, Packerland began supplying Land O'Lakes with a product identified as condensed WPC ("the Product").

4

18.     Land O'Lakes originally purchased the Product from Packerland through Dairy Directions, Inc. ("Dairy Directions").

19.     Dairy Directions acted as Packerland's agent for the sale of the Product to Land O'Lakes.

20.     Daniel, Scott and Angela made representations to Land O'Lakes regarding the Product through Dairy Directions.

21.     In May 2006, Daniel, through Dairy Directions, furnished Land O'Lakes with Packerland's specification for the Product.  The specification identified the Product as "WPC Con," which was an abbreviation for condensed Whey Protein Concentrate.  A true and correct copy of the specification is attached to this Second Amended Complaint as Exhibit A.

22.     In or around January 2012, Packerland ceased using Dairy Directions as its sales agent and began selling the Product directly to Land O'Lakes.

23.     In or around January 2012, Land O'Lakes and Packerland entered into a written Purchase Agreement.  A true and correct copy of the Purchase Agreement is attached to this Second Amended Complaint as Exhibit B.

24.     Under the terms of the Purchase Agreement, Packerland agreed to supply Land O'Lakes with WPC made exclusively from fresh sweet whey.

25.     Under the terms of the Purchase Agreement, Packerland agreed that all WPC sold to Land O'Lakes would comply with an Ingredient Specification attached to the Purchase Agreement.  The Ingredient Specification had been previously provided by Land O'Lakes to Daniel, Scott and Angela in 2011.

26.     Under the terms of the Purchase Agreement, Packerland agreed that it would comply with all laws, rules and regulations relating to the production and storage of WPC.

5

27.     Under the terms of the Purchase Agreement, Packerland agreed that the WPC supplied to Land O'Lakes would comply with all applicable laws, rules and regulations.

28.     Daniel, Scott and Angela reviewed, approved and authorized the terms of the Purchase Agreement.

29.     Along with each shipment of the Product, Packerland provided Land O'Lakes with a bill of lading that identified the Product as "WPC," which was an abbreviation for Whey Protein Concentrate.  A true and correct sample of one of Packerland's bills of lading is attached to this Second Amended Complaint as Exhibit C.

30.     The bills of lading that Packerland provided to Land O'Lakes were approved and authorized by Daniel, Scott and/or Angela.

31.     Packerland, through Dairy Directions, also sent Land O'Lakes invoices that identified the Product as "WPC," which was an abbreviation for Whey Protein Concentrate.  A true and correct sample of one of the invoices is attached to this Second Amended Complaint as Exhibit D.

32.     The invoices that Dairy Directions sent to Land O'Lakes were approved and authorized by Daniel, Scott and/or Angela.

33.     When it sold the Product directly to Land O'Lakes, Packerland sent invoices to Land O'Lakes that described the Product as "Protein."  A true and correct sample of one of Packerland's invoices is attached to this Second Amended Complaint as Exhibit E.

34.     The invoices that Packerland sent to Land O'Lakes were prepared, approved and authorized by Daniel, Scott and/or Angela.

6

## C.    Adulteration of the Product.

35.    Protein levels in milk and milk derivatives, like WPC, are determined by measuring nitrogen levels and calculating corresponding protein levels by using average nitrogen levels found in milk protein.   This manner of measuring protein is known as the Kjeldahl Method.

36.    Calculation of protein levels in a milk-related product under the Kjeldahl Method can be artificially inflated by adding compounds containing high levels of nitrogen to the product.  Such compounds are referred to as non-protein nitrogen.

37.    One type of non-protein nitrogen is urea.  Urea is a highly nitrogenous product.  It is used primarily in fertilizer.

38.    Adding urea to a milk-related product can trick testing under the Kjeldahl Method into showing a higher protein level for the product.

39.    Buyers of feed-grade WPC rely upon the protein level of WPC to formulate and produce animal milk-replacer products.  Adding non-protein nitrogen, like urea, to WPC results in an ingredient with an inferior level of true protein.  WPC with a lower level of true protein is less valuable than WPC with a higher level of true protein.

40.    Adding non-protein nitrogen, like urea, as an ingredient to commercial feed for animals with non-functioning rumen systems, like calves, as a source of equivalent crude protein constitutes a violation of law, including Wis. Stat. § 94.72(4) and (8)(a) and (b); Wis. Admin. Code §§ ATCP 42.52(1) and (2) and 42.54(1); Minn. Stat. § 25.37; and Minn. R. 1510.2180, Subp. 1.

41.    Failing to disclose the addition of non-protein nitrogen, like urea, on the label of commercial feed or an ingredient for commercial feed also constitutes a violation of law,

including Wis. Stat. § 94.72(2)(a)(7) and (8)(c); Wis. Admin. Code §§ ATCP 42.04(2)(e), 42.16(1)(a), 42.52(1) and (3) and 42.54(1); Minn. Stat. §§ 25.35 and 25.36; Minn. R. 1510.1943, Subp. 1(E); Minn. R. 1510.1947, Subp. 6; Minn. R. 1510.2070, Subp. 5; and Minn. R. 1510.2130, Subp. 1.

42.     Including the word "protein" in the name of a commercial feed product that contains added non-protein nitrogen, like urea, is deemed to be misleading and deceptive and is prohibited by law, including Wis. Admin. Code § ATCP 42.06(4)(c)(1); and Minn. R. 1510.1947, Subp. 2(D).

43.     Unbeknownst to Land O'Lakes, at the direction of Daniel, Scott and/or Angela, Packerland began adding urea to the Product in or around 2006 to increase its equivalent crude protein level.

44.     Daniel, Scott and Angela were, at all pertinent times, aware that urea was being added to the Product.

45.     At all pertinent times, Daniel, Scott and Angela approved and authorized the addition of urea to the Product.

**D.      Concealment of Adulteration.**

46.     Land O'Lakes experienced numerous problems with the Product, including the following:

> a.      Production stalls and problems;
>
> b.      Increased tailings (waste product);
>
> c.      Reduced production;
>
> d.      Ammonia-like odor and off flavor;
>
> e.      High levels of non-encapsulated fat;

f.      Low solids;

g.      High pH levels;

h.      High non-protein nitrogen levels; and

i.      High ash levels.

47.     Land O'Lakes informed Daniel, Scott and Angela of the problems it was experiencing with the Product on numerous occasions.

48.     In response to Land O'Lakes' complaints, Daniel, Scott and Angela claimed they did not know what was causing Land O'Lakes' problems or the origin of the increased non-protein nitrogen in the Product. They blamed the problems experienced by Land O'Lakes on a number of factors, including the following:

a.      Poor-quality whey received from Packerland's suppliers;

b.      Problems with Packerland's ultra-filtration equipment;

c.      Problems with Packerland's evaporator equipment;

d.      Problems with the piping in Packerland's facility;

e.      Problems with the valves in Packerland's facility;

f.      Problems with equipment maintenance; and

g.      Cross-contamination with other products.

True and correct copies of electronic-mail messages and other documents evidencing some of the statements made by Daniel, Scott and Angela are collectively attached to this Second Amended Complaint as Exhibit F.

49.     Daniel, Scott and Angela knew that the problems Land O'Lakes was experiencing with the Product were caused by the urea being added to the Product and deliberately concealed

9

this fact from Land O'Lakes. Daniel, Scott and Angela also knew that the origin of the increased non-protein nitrogen in the Product was the urea being added to the Product.

50. Daniel, Scott and Angela failed to disclose and actively concealed from Land O'Lakes the fact that urea was being added to the Product.

51. Upon information and belief, Packerland also sold product contaminated with urea, which it claimed was WPC, to other customers, including Milk Specialties Global Nutrition ("Milk Specialties") and Merrick's, Inc. ("Merrick's").

52. Upon information and belief, Daniel, Scott and Angela similarly failed to disclose to and actively concealed from Milk Specialties, Merrick's and other customers that it was adding urea to their products.

**E.** **Fraudulent Transfers.**

53. In May 2012, Daniel and Scott sold their interest in Packerland to a company called Packerland Whey Intermediary Holding Company, Inc. ("Packerland Holding") pursuant to a Stock Purchase Agreement for approximately $23.5 million.

54. Daniel, Scott and Angela worked for Packerland Holding after the sale of Packerland.

55. Daniel, Scott and Angela continued their fraudulent scheme of adding urea to the Product after the sale of Packerland to Packerland Holding.

56. After Packerland Holding's acquisition of Packerland, Daniel, Scott and Angela continued to conceal that urea was being added to the Product and similar products supplied to other customers.

57.     Daniel, Scott and Angela knew or reasonably should have known that Packerland Holding would eventually discover that urea was being added to the Product and similar products supplied to other customers.

58.     Daniel, Scott and Angela knew or reasonably should have known that Packerland Holding would assert claims against them upon its discovery of the urea scheme to recover some or all of the purchase price it paid to acquire Packerland.

59.     Daniel, Scott and Angela also knew or reasonably should have known that Land O'Lakes and other customers that received product from Packerland adulterated with urea would discover the urea scheme and assert claims against them for substantial damages.

60.     Upon information and belief, Daniel, Scott and Angela transferred certain of their assets to try to put them beyond the reach of their creditors, including Packerland Holding, Land O'Lakes, Milk Specialties and Merrick's.

61.     On April 27, 2012, shortly before the sale of Packerland to Packerland Holding, Daniel and Angela created Ratajczak Trust and transferred six parcels of real property located in Kewaunee County, Wisconsin ("Ratajczak Parcels"), to Ratajczak Trust.  A true and correct copy of the Warranty Deed evidencing Daniel and Angela's transfer of the Ratajczak Parcels to Ratajczak Trust is attached to this Second Amended Complaint as Exhibit G.

62.     In their Warranty Deed, Daniel and Angela describe the Ratajczak Parcels as "homestead property."  The amount of land represented by the Ratajczak Parcels, however, exceeds the amount of land reasonably necessary for use by Daniel and Angela as a home.  The value of the Ratajczak Parcels also exceeds the amount of the exemption allowed under Wis. Stat. § 815.20.

63.     Daniel and Angela transferred the Ratajczak Parcels to Ratajczak Trust to try to put the Ratajczak Parcels beyond the reach of Packerland Holding, Land O'Lakes and other actual and potential creditors.

**F.     Discovery of Adulteration.**

64.     In December 2012, Packerland Holding discovered that Daniel, Scott and Angela had been adding urea to the Product and similar products sold to other customers.

65.     After discovering the urea scheme, Packerland Holding terminated the employment of Daniel and Angela.  Scott subsequently resigned from Packerland Holding.

66.     Packerland Holding also threatened to sue Daniel, Scott and Angela and provided them with a copy of a draft Verified Complaint for Injunctive and Other Relief ("Verified Complaint").  A copy of the Verified Complaint is attached to this Amended Complaint as Exhibit H.

67.     In its Verified Complaint, Packerland Holding made a number of allegations against Daniel, Scott and Angela, including the following:

        a.      Packerland Holding alleged that Packerland agreed to produce and sell WPC to Land O'Lakes that "would not contain non-protein nitrogen in excess of what naturally occurs in whey."  (Verified Complaint ¶ 11).

        b.      Packerland Holding alleged that the contract between Land O'Lakes and Packerland required the WPC supplied to Land O'Lakes to be "made from whey exclusively, not chemically-derived non-protein nitrogen like urea."  (Verified Complaint ¶ 11).

        c.      Packerland Holding alleged that Daniel, Scott and Angela were secretly adding urea to the Product and similar products sold to other customers by Packerland and Packerland Holding.  (Verified Complaint ¶ 38).

d.   Packerland Holding alleged that adding urea to the Product constituted a breach of the contract between Land O'Lakes and Packerland.  (Verified Complaint ¶ 40).

68.   Several weeks later, on or about December 28, 2012, Daniel, Scott, Angela and Scott's wife, Elizabeth Ratajczak ("Elizabeth"), entered into a Settlement Agreement with Packerland, Packerland Holding and others under which they agreed, among other things, to pay Packerland Holding consideration in excess of $13 million to settle the claims referenced in the Verified Complaint.  A copy of the Settlement Agreement is attached to this Second Amended Complaint as Exhibit I.

69.   In January 2013, Daniel, Scott, Angela and Elizabeth filed an insurance-coverage lawsuit against Beazley Solutions, Ltd. ("Beazley"), the insurance company that insured the representations and warranties made by Daniel and Scott in the Stock Purchase Agreement.  In the insurance-coverage lawsuit, Daniel, Scott, Angela and Elizabeth sought reimbursement for the amounts they paid to settle the claims asserted in the Verified Complaint.

70.   In or around September 2014, Land O'Lakes learned from unsealed documents filed in the insurance-coverage case that Daniel, Scott and Angela had been adding urea to the Product.

71.   From 2006 through 2012, Land O'Lakes paid over $15 million for the Product without knowing that the Product was adulterated with urea.  Because the Product was adulterated with urea, it had little or no value.

72.   Land O'Lakes has satisfied all conditions to the commencement and prosecution of this action.

**COUNT I**
**FRAUDULENT MISREPRESENTATION**

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

73.     Daniel, Scott and Angela made the following representations of fact to Land O'Lakes:

a.     Daniel, Scott and Angela represented to Land O'Lakes in hundreds of bills of lading from September 2006 through December 2012 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

b.     Daniel, Scott and Angela represented to Land O'Lakes through Packerland's agent, Dairy Directions, in hundreds of invoices from September 2006 through December 2011 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

c.     Daniel, Scott and Angela represented to Land O'Lakes in hundreds of invoices from January through December 2012 that the Product consisted of true "Protein;"

d.     Daniel, Scott and Angela represented to Land O'Lakes that they did not know the cause of the problems experienced by Land O'Lakes in using the Product or the origin of the increased non-protein nitrogen in the Product; and

e.     Daniel, Scott and Angela represented to Land O'Lakes that the problems Land O'Lakes was experiencing with the Product were caused by a number of factors, including, poor-quality whey received from Packerland's suppliers, problems with Packerland's ultra-filtration equipment, problems with Packerland's evaporator equipment, problems with piping in Packerland's facility, problems with valves in Packerland's facility, problems with equipment maintenance and cross-contamination with other products.

14

74.     The representations made by Daniel, Scott and Angela were materially false and misleading at the time they were made to Land O'Lakes.

75.     Daniel, Scott and Angela made the representations knowing them to be untrue or recklessly without caring whether the representations were true or false.

76.     Daniel, Scott and Angela made the representations with the intent to deceive and defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the Product from Packerland.

77.     Land O'Lakes believed the representations made by Daniel, Scott and Angela were true.

78.     Land O'Lakes relied to its detriment upon the representations made by Daniel, Scott and Angela by purchasing and continuing to purchase the Product from Packerland.

79.     Land O'Lakes' reliance on the representations made by Daniel, Scott and Angela was justified and reasonable under the circumstances.

80.     As a direct and proximate result of the fraudulent misrepresentations made by Daniel, Scott and Angela, Land O'Lakes has incurred damages in excess of $10 million.

81.     Land O'Lakes is entitled to recover its damages from Daniel, Scott and Angela, jointly and severally.

82.     Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT II
## STRICT-LIABILITY FRAUD

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended

Complaint and further states and alleges as follows:

83. Daniel, Scott and Angela made the following representations of fact to Land O'Lakes:

a. Daniel, Scott and Angela represented to Land O'Lakes in hundreds of bills of lading from September 2006 through December 2012 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

b. Daniel, Scott and Angela represented to Land O'Lakes through Packerland's agent, Dairy Directions, in hundreds of invoices from September 2006 through December 2011 that the Product was "WPC," which was an abbreviation for Whey Protein Concentrate;

c. Daniel, Scott and Angela represented to Land O'Lakes in hundreds of invoices from January through December 2012 that the Product consisted of true "Protein;"

d. Daniel, Scott and Angela represented to Land O'Lakes that they did not know the cause of the problems experienced by Land O'Lakes in using the Product or the origin of the increased non-protein nitrogen in the Product; and

e. Daniel, Scott and Angela represented to Land O'Lakes that the problems Land O'Lakes was experiencing with the Product were caused by a number of factors, including, poor-quality whey received from Packerland's suppliers, problems with Packerland's ultra-filtration equipment, problems with Packerland's evaporator equipment, problems with piping in Packerland's facility, problems with valves in Packerland's facility, problems with equipment maintenance and cross-contamination with other products.

84. The representations made by Daniel, Scott and Angela were materially false and misleading at the time they were made to Land O'Lakes.

85. Daniel, Scott and Angela made the representations with personal knowledge of the falsity of the representations or were so situated that they necessarily ought to have known that the representations were false.

86. Daniel, Scott and Angela had an economic interest in selling the Product to Land O'Lakes.

87. Daniel, Scott and Angela made the representations with the intent to deceive and defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the Product from Packerland.

88. Land O'Lakes believed the representations made by Daniel, Scott and Angela were true.

89. Land O'Lakes relied to its detriment upon the representations made by Daniel, Scott and Angela by purchasing and continuing to purchase the Product from Packerland.

90. Land O'Lakes' reliance on the representations made by Daniel, Scott and Angela was justified and reasonable under the circumstances.

91. As a direct and proximate result of the fraudulent misrepresentations made by Daniel, Scott and Angela, Land O'Lakes has incurred damages in excess of $10 million.

92. Land O'Lakes is entitled to recover its damages from Daniel, Scott and Angela, jointly and severally.

93. Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

## COUNT III
## FRAUDULENT CONCEALMENT

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended

Complaint and further states and alleges as follows:

94. Daniel, Scott and Angela failed to disclose the following facts to Land O'Lakes:

    a. That the Product was adulterated with urea;

    b. That the Product did not qualify as WPC;

    c. That the alleged "protein" contained in the Product was not true protein; and

    d. That the problems experienced by Land O'Lakes with the Product were caused by the adulteration of the Product with urea.

95. Daniel, Scott and Angela had a duty to disclose the foregoing facts to Land O'Lakes for a number of reasons, including the following:

    a. Daniel, Scott and Angela had a duty to disclose the fact that the Product contained urea to Land O'Lakes under Wis. Stat. § 94.72(2)(a)(7) and (8)(c); Wis. Admin. Code §§ ATCP 42.04(2)(e), 42.16(1)(a), 42.52(1) and (3) and 42.54(1); Minn. Stat. §§ 25.35 and 25.36; Minn. R. 1510.1943, Subp. 1(E); Minn. R. 1510.1947, Subp. 6; Minn. R. 1510.2070, Subp. 5; and Minn. R. 1510.2130, Subp. 1.

    b. Daniel, Scott and Angela had a duty to disclose the foregoing facts to Land O'Lakes because: (1) the facts were material to Land O'Lakes' decision to purchase the Product from Packerland and Packerland Holding; (2) Daniel, Scott and Angela knew that Land O'Lakes was purchasing the Product from Packerland and Packerland Holding without knowing the foregoing facts and based upon the assumption that the Product was pure and not adulterated with urea; (3) the foregoing facts were peculiarly and exclusively within the knowledge of Daniel, Scott and Angela and Land O'Lakes could not reasonably be expected to discover those

facts; and (4) based upon the objective circumstances, Land O'Lakes would reasonably expect disclosure of the foregoing facts by Daniel, Scott and Angela.

        c.     Daniel, Scott and Angela had to duty to disclose the foregoing facts to Land O'Lakes to prevent representations that they previously made to Land O'Lakes from being misleading, including representations set forth in bills of lading and invoices, representations contained in and evidenced by the documents attached to this Second Amended Complaint as Exhibit F and oral representations made by Daniel, Scott and Angela regarding the Product, the cause of the problems experienced by Land O'Lakes with the Product and the origin of the increased non-protein nitrogen in the Product.

        d.     Daniel, Scott and Angela had a duty to disclose the foregoing facts to Land O'Lakes under the terms of the Purchase Agreement.

96.    The foregoing facts would have been material and important to Land O'Lakes' decision to purchase and continue purchasing the Product from Packerland and Packerland Holding. If Land O'Lakes had known any of the foregoing facts, it would have discontinued purchasing the Product from Packerland and Packerland Holding.

97.    Daniel, Scott and Angela deliberately concealed the foregoing facts from Land O'Lakes with the intent and for the purpose of deceiving Land O'Lakes and inducing Land O'Lakes to purchase and continue purchasing the Product.

98.    As a direct and proximate result of the fraudulent concealment perpetrated by Daniel, Scott and Angela, Land O'Lakes has incurred damages in excess of $10 million.

99.    Land O'Lakes is entitled to recover its damages from Daniel, Scott and Angela, jointly and severally.

100.     Land O'Lakes is also entitled to recover prejudgment interest, costs and disbursements.

### COUNT IV
### VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

101.     Packerland is an enterprise engaged in interstate commerce and/or activities that affect interstate commerce within the meaning of 18 U.S.C. § 1961(4).

102.     Daniel, Scott and Angela controlled, operated and participated in the conduct of the Packerland enterprise.

103.     The addition of urea by Daniel, Scott and Angela to the Product and similar products sold to other customers, including Milk Specialties and Merrick's, constituted a scheme to defraud within the meaning of 18 U.S.C. § 1341.

104.     Daniel, Scott and Angela used or caused to be used the mails of the United States for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott and Angela used or caused to be used the mails of the United States to send false and fraudulent invoices, directly and indirectly, to Land O'Lakes, Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

105.     Daniel, Scott and Angela also deposited or caused to be deposited matters and things to be sent or delivered by private or commercial interstate carriers for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott and Angela deposited or caused to be deposited false and fraudulent bills of lading for the Product to be sent or delivered by private or commercial interstate carriers from Luxemburg,

Wisconsin, to Land O'Lakes' facility in Browerville, Minnesota, for the purpose of executing their scheme to defraud. Upon information and belief, Daniel, Scott and Angela also deposited or caused to be deposited false and fraudulent bills of lading to be sent or delivered by private or commercial interstate carriers to Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

106. As evidenced, in part, by the documents attached to this Second Amended Complaint as Exhibit F, Daniel, Scott and Angela also used or caused to be used interstate wires, including telephone and electronic mail, for the purpose of executing and concealing their scheme to defraud against Land O'Lakes in violation of 18 U.S.C. § 1343. Upon information and belief, Daniel, Scott and Angela also used or caused to be used interstate wires for the purpose of executing and concealing their scheme to defraud against other customers, including Milk Specialties and Merrick's.

107. Daniel, Scott and Angela perpetrated hundreds of violations of 18 U.S.C. § 1341 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

108. Daniel Scott and Angela perpetrated numerous violations of 18 U.S.C. § 1343 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

109. The numerous violations of 18 U.S.C. §§ 1341 and 1343 perpetrated by Daniel, Scott and Angela against Land O'Lakes, Milk Specialties, Merrick's and other customers for a period of over six years constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961.

110.   Daniel, Scott and Angela used income derived, directly or indirectly, from the aforementioned pattern of racketeering activity to operate Packerland in violation of 18 U.S.C. § 1962(a).  For example, Daniel, Scott and Angela used proceeds generated by the aforementioned pattern of racketeering activity to purchase urea to add to the Product and similar products sold to other customers, including Milk Specialties and Merrick's.

111.   Daniel, Scott and Angela controlled, conducted and participated in, directly or indirectly, the affairs of Packerland through the aforementioned pattern of racketeering in violation of 18 U.S.C. § 1962(c).

112.   Daniel, Scott and Angela conspired and colluded with each other to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

113.   Land O'Lakes has incurred damages as a direct and proximate cause of the violations of 18 U.S.C. § 1962(a) and (c) perpetrated by Daniel, Scott and Angela in excess of $10 million.

114.   Land O'Lakes is entitled to recover three times the amount of its damages, plus its attorney fees, costs and disbursements from Daniel, Scott and Angela, jointly and severally, under 18 U.S.C. § 1964(c).

## COUNT V
## VIOLATION OF THE WISCONSIN ORGANIZED CRIME CONTROL ACT

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

115.   Packerland is an enterprise within the meaning of Wis. Stat. § 946.82(2).

116.   Daniel, Scott and Angela controlled, operated and participated in the conduct of the Packerland enterprise.

117.    The addition of urea by Daniel, Scott and Angela to the Product and similar products sold to other customers, including Milk Specialties and Merrick's, constituted a scheme to defraud within the meaning of 18 U.S.C. § 1341.

118.    Daniel, Scott and Angela used or caused to be used the mails of the United States for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott and Angela used or caused to be used the mails of the United States to send false and fraudulent invoices, directly and indirectly, to Land O'Lakes, Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

119.    Daniel, Scott and Angela also deposited or caused to be deposited matters and things to be sent or delivered by private or commercial interstate carriers for the purpose of executing their scheme to defraud in violation of 18 U.S.C. § 1341.  In particular, Daniel, Scott and Angela deposited or caused to be deposited false and fraudulent bills of lading for the Product to be sent or delivered by private or commercial interstate carriers from Luxemburg, Wisconsin, to Land O'Lakes' facility in Browerville, Minnesota, for the purpose of executing their scheme to defraud.  Upon information and belief, Daniel, Scott and Angela also deposited or caused to be deposited false and fraudulent bills of lading to be sent or delivered by private or commercial interstate carriers to Milk Specialties, Merrick's and other customers for the purpose of executing their scheme to defraud.

120.    As evidenced, in part, by the documents attached to this Second Amended Complaint as Exhibit F, Daniel, Scott and Angela also used or caused to be used interstate wires, including telephone and electronic mail, for the purpose of executing and concealing their scheme to defraud against Land O'Lakes in violation of 18 U.S.C. § 1343.  Upon information and belief, Daniel, Scott and Angela also used or caused to be used interstate wires for the

purpose of executing and concealing their scheme to defraud against other customers, including Milk Specialties and Merrick's.

121.    Daniel, Scott and Angela perpetrated hundreds of violations of 18 U.S.C. § 1341 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

122.    Daniel Scott and Angela perpetrated numerous violations of 18 U.S.C. § 1343 against Land O'Lakes, Milk Specialties, Merrick's and other customers from at least 2006 through November 2012.

123.    The numerous violations of 18 U.S.C. §§ 1341 and 1343 perpetrated by Daniel, Scott and Angela against Land O'Lakes, Milk Specialties, Merrick's and other customers for a period of over six years constitute a pattern of racketeering activity within the meaning of Wis. Stat. § 946.82(3).

124.    Daniel, Scott and Angela used or invested, directly or indirectly, proceeds generated by the aforementioned pattern of racketeering activity to operate Packerland in violation of Wis. Stat. § 946.83(1).  For example, Daniel, Scott and Angela used proceeds generated by the aforementioned pattern of racketeering activity to purchase urea to add to the Product and similar products sold to other customers, including Milk Specialties and Merrick's.

125.    Daniel, Scott and Angela controlled, conducted and participated in, directly or indirectly, the affairs of Packerland through the aforementioned pattern of racketeering in violation of Wis. Stat. § 946.83(3).

126.    Land O'Lakes has incurred damages as a direct and proximate cause of the violations of Wis. Stat. § 946.83(1) and (3) perpetrated by Daniel, Scott and Angela in excess of $10 million.

127.     Land O'Lakes is entitled to recover two times the amount of its damages, plus its attorney fees, costs and disbursements from Daniel, Scott and Angela, jointly and severally, under Wis. Stat. § 946.87(4).

## COUNT VI
## VIOLATION OF THE WISCONSIN UNIFORM FRAUDULENT TRANSFERS ACT

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

128.     Daniel and Angela transferred the Ratajczak Parcels to Ratajczak Trust with the intent to hinder, delay and/or defraud Land O'Lakes and other creditors within the meaning of Wis. Stat. § 242.04(1)(a).

129.     Daniel and Angela transferred the Ratajczak Parcels to Ratajczak Trust without receiving a reasonably equivalent value in exchange and at a time when Daniel and Angela intended to incur, believed they would incur or reasonably should have believed they would incur debts beyond their ability to pay as they became due within the meaning of Wis. Stat. § 242.04(1)(b).

130.     Daniel and Angela transferred the Ratajczak Parcels to Ratajczak Trust without receiving a reasonably equivalent value in exchange and Daniel and Angela were insolvent at the time of the transfers or became insolvent as a result of the transfers within the meaning of Wis. Stat. § 242.05(1).

131.     Land O'Lakes is entitled to the remedies set forth in Wis. Stat. § 242.07, including, without limitation, avoidance of the aforementioned transfers, attachment against the Ratajczak Parcels and temporary and permanent injunctive relief.  In the alternative, Land O'Lakes is entitled to a money judgment against Ratajczak Trust and any subsequent transferees

of the Ratajczak Parcels in an amount equal to the value of the Ratajczak Parcels under Wis. Stat. § 242.08(2).

**COUNT VII**
**CONSPIRACY TO COMMIT FRAUDULENT MISREPRESENTATION,**
**STRICT-LIABILITY FRAUD, FRAUDULENT CONCEALMENT,**
**RACKETEERING AND FRAUDULENT TRANSFERS**

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

132.    Daniel, Scott and Angela conspired and colluded with each other to perpetrate the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment, racketeering and fraudulent transfers alleged in this Second Amended Complaint.

133.    Daniel, Scott and Angela committed unlawful and overt acts in furtherance of their conspiracy and collusion.

134.    As a direct and proximate result of the conspiracy and collusion of Daniel, Scott and Angela to perpetrate the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment, racketeering and fraudulent transfers alleged in this Second Amended Complaint, Land O'Lakes has incurred damages in excess of $10 million.

135.    Based upon their conspiracy, Daniel, Scott and Angela are jointly and severally liable for all of the damages incurred by Land O'Lakes.

**COUNT VIII**
**AIDING AND ABETTING**

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

136.    Daniel, Scott and Angela knew that the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment, racketeering and fraudulent transfers alleged in this

Second Amended Complaint constituted breaches of duties and obligations owed to Land O'Lakes.

137.     Daniel, Scott and Angela consciously and intentionally provided each other with substantial assistance and encouragement for the purpose and with the intent of perpetrating the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment, racketeering and fraudulent transfers alleged in this Second Amended Complaint.

138.     As a result of their aiding and abetting, Daniel, Scott and Angela are jointly and severally liable for all of the damages incurred by Land O'Lakes.

## COUNT IX
## PUNITIVE DAMAGES

Land O'Lakes restates all of the foregoing paragraphs of this Second Amended Complaint and further states and alleges as follows:

139.     Daniel, Scott and Angela acted maliciously and with intentional disregard of Land O'Lakes' rights by engaging in the fraudulent misrepresentation, strict-liability fraud, fraudulent concealment and racketeering alleged in this Second Amended Complaint.

140.     Accordingly, in addition to compensatory damages, Land O'Lakes is entitled to recover punitive damages from Daniel, Scott and Angela in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Land O'Lakes hereby demands a trial by jury.

**WHEREFORE**, Land O'Lakes respectfully prays for this Court's judgment as follows:

1.     Awarding Land O'Lakes compensatory damages in an amount to be proved at trial in excess of $10 million;

2.      Trebling the damages recoverable by Land O'Lakes under the federal Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1964;

3.      Doubling the damages recoverable by Land O'Lakes under the Wisconsin Organized Crime Control Act under Wis. Stat. § 946.87;

4.      Holding Daniel, Scott, Angela jointly and severally liable for the damages incurred by Land O'Lakes;

5.      Awarding Land O'Lakes punitive damages against Daniel, Scott and Angela, jointly and severally, in an amount to be determined at trial;

6.      Temporarily and permanently restraining and enjoining Daniel, Angela and Ratajczak Trust from making any further transfers of the Ratajczak Parcels;

7.      Setting aside and annulling the transfers of the Ratajczak Parcels and allowing Land O'Lakes to exercise all other applicable remedies under Wis. Stat. § 242.07;

8.      Granting Land O'Lakes a money judgment against Ratajczak Trust and any subsequent transferees of the Ratajczak Parcels in an amount equal to the value of the Ratajczak Parcels under Wis. Stat. § 242.08(2);

9.      Awarding Land O'Lakes prejudgment interest;

10.      Awarding Land O'Lakes all of its attorney fees, costs and disbursements; and

11.      Granting Land O'Lakes all such other and further relief as the Court deems just and equitable under the circumstances.

LAND O'LAKES, INC.

Dated: April 17, 2015                    By:  s/Jonathan C. Miesen
                                              Jonathan C. Miesen
                                              Associate General Counsel-Litigation

                                         4001 Lexington Avenue North
                                         Arden Hills, Minnesota 55126
                                         Telephone:   (651) 375-5985
                                         Facsimile:   (651) 234-0535
                                         E-Mail:  jcmiesen@landolakes.com

                                         and

                                         Eric A. Bartsch
                                         Stoel Rives LLP
                                         33 South Sixth Street
                                         Suite 4200
                                         Minneapolis, MN 55402
                                         Telephone:   (612) 373-8800
                                         Facsimile:   (612) 373-8881
                                         Email:   eabartsch@stoel.com

                                         Attorneys for Plaintiff