UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(GREEN BAY DIVISION)

LAND O'LAKES, INC.,

        Plaintiff,

-and-

Case No. 1:14-cv-01388-WCG

RURAL MUTUAL INSURANCE CO., et al.,

        Plaintiffs-Intervenors,

  v.

DANIEL J. RATAJCZAK, JR., et al.,

        Defendants.

**DEFENDANTS, DANIEL J. RATAJCZAK, JR., SCOTT A. RATAJCZAK, ANGELA R. RATAJCZAK, AND THE DANIEL J. RATAJCZAK, JR. AND ANGELA R. RATAJCZAK REVOCABLE TRUST DATED APRIL 25, 2012'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

## INTRODUCTION

Land O' Lakes' Second Amended Complaint is lengthy and detailed, but the prolix nature of the complaint cannot mask the fundamental flaw running through each and every claim: Land O' Lakes hasn't suffered any actual economic injury that would entitle it to damages. In fact, Land O' Lakes has already conceded it is not seeking *any* damages in this case based upon decreased or lost profits – because it used, sold, and made a profit on all of the products it claims in this case were adulterated. What Land O' Lakes really seeks are damages that will give it windfall profits – something the federal courts are not set up to provide.[1] For the

---

[1] *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997).

reasons set forth below, summary judgment should be granted to defendants, and all of Land O' Lakes' claims should be dismissed.

## BACKGROUND FACTS

From 2006 through 2012, Land O' Lakes purchased Packerland Whey Products, Inc. ("Packerland") Condensed Whey Protein Concentrate ("WPC") for use as an ingredient in over 600 different Land O' Lakes feed products. (Plaintiffs' Proposed Material Facts, ¶ 1.) From 2006 through 2011, Land O' Lakes purchased Packerland WPC from Dairy Directions, Inc. ("Dairy Directions"), an independent dairy products broker. (*Id.*, ¶ 2.) Starting on January 1, 2012, Land O' Lakes purchased Packerland WPC directly from Packerland pursuant to a contract between Packerland and Land O' Lakes. (*Id.*, ¶ 3.) Land O' Lakes accepted, used, and paid for all but four loads of Packerland WPC, and it sold and made a profit on all feed products it was used in. (*Id.*, ¶ 4-5.)

Land O' Lakes filed this case on November 3, 2014. [Complaint, ECF1.] Over five years prior to filing this case, Land O' Lakes started to attribute sporadic production line problems it was experiencing as being caused by the Packerland WPC it was using. (*Id.*, ¶¶ 6-7.) The production line problems prompted Land O' Lakes to more closely investigate, monitor, and test the Packerland WPC it was receiving. (*Id.*, ¶¶ 8-9.) This closer scrutiny and testing led Land O' Lakes to notice that some Packerland WPC had an ammonia smell, high pH levels, and higher-than-naturally-occurring levels of non-protein nitrogen ("NPN"). (*Id.*, ¶¶ 9-11.) By October 2009, Land O' Lakes was already internally questioning whether Packerland might be using an additive to boost protein levels in WPC. (*Id.*, ¶ 11.)

On September 21, 2010 tests again showed that the NPN levels in certain batches of Packerland WPC were higher than what could be expected to be naturally occurring. (*Id.*, ¶

2

12.) On October 27, 2010, Land O' Lakes emailed Dairy Directions to inform it of the September 24, 2010 test results, and stated that this type of product was unacceptable, that it was "not sure what Packerland sent us, but it doesn't qualify as condensed WPC" and that such a product was "obviously not acceptable." (*Id.*, ¶ 13.) By the end of October, 2010, Land O' Lakes believed that its alleged production problems were due to the higher than normal levels of NPN in Packerland WPC.[2] (*Id.*, ¶ 14.)

Despite the alleged production problems, Land O' Lakes accepted and used all but four loads of Packerland WPC that it knew had unnaturally high NPN levels, an ammonia smell, and/or high pH levels. (*Id*, ¶ 16.) Land O' Lakes sold and made a profit on all feed products it produced using Packerland WPC. (*Id.*, ¶ 17.) Land O' Lakes has never recalled any feed products it produced using Packerland WPC. (*Id.*, ¶ 18.) Land O' Lakes has never received any returns of any feed products it produced using Packerland WPC. (*Id.*, ¶ 19.) Land O' Lakes is unaware of any end-user or supplier complaints regarding the performance or quality of any feed products that were produced using Packerland WPC. (*Id.*, ¶ 20.) Land O' Lakes is unaware of any end-user or supplier returns of any feed products that were produced using Packerland WPC. (*Id.*, ¶ 21.) Land O' Lakes is also unaware of any animals that were adversely affected by ingesting any of its feed products that were produced using Packerland WPC. (*Id.*, ¶ 22.) In fact, Land O' Lakes has never received any claims, complaints or problems related to any of its feed products that were produced using Packerland WPC. (*Id.*, ¶ 23.)

Land O' Lakes filed the present suit against defendants based upon the presence of non-natural NPN in certain batches of Packerland WPC. [Second Amended Complaint, ECF

---

[2] Despite the sporadic problems with Packerland WPC, by January 1, 2012, Land O' Lakes was comfortable enough with Packerland's WPC that it entered into a direct contract with Packerland to acquire as many loads as possible. (*Id.*, ¶ 15.)

3

106, ¶¶ 37, 43.] Land O' Lakes initially sued under tort, breach of contract, breach of warranty, and RICO and WOCCA theories. [ECF 1.] After filing its initial complaint, Land O' Lakes quickly settled with, and then dismissed, Packerland, Packerland Holding, and Wayne Hallet. [ECF 92.] Immediately thereafter, Land O' Lakes amended its complaint, and dropped all breach of contract and breach of warranty claims against the remaining parties. [ECF 97 and 106.] Land O' Lakes is now pursuing only the following claims: (1) Fraudulent Misrepresentation; (2) Strict-Liability Fraud; (3) Fraudulent Concealment; (4) Violation of RICO; (5) Violation of WOCCA; (6) Violation of The Wisconsin Uniform Fraudulent Transfers Act; (7) Conspiracy to Commit Fraudulent Misrepresentation, Strict-Liability Fraud, Fraudulent Concealment, Racketeering and Fraudulent Transfers; (8) Aiding and Abetting; and (9) Punitive Damages. [ECF 106.]

Land O' Lakes seeks compensatory damages of over $10,000,000 under the theory that the Packerland WPC it purchased, used, and sold was worth less than what it paid because the WPC was adulterated with added urea/NPN (i.e. the Packerland WPC was defective). (Second Amended Complaint, ¶ 71, Prayer for Relief ¶ 1; Pltf. Prop. Mat. Facts, ¶ 24.) Land O' Lakes is not, however, seeking any damages based upon a decline in the profitability of any products that were made using Packerland WPC. (Pltf. Prop. Mat. Facts, ¶ 25.) Despite its allegations of production problems (albeit ones that did not result in any lost profits), Land O' Lakes has refused to produce, and sworn that it is "virtually impossible" for it to provide, any of the following information:

- The specific loads of Packerland WPC were used as an ingredient in specific production runs and the identification of products produced in those production runs.

4

- The identification and quantity of any other ingredients that were combined with Packerland WPC to produce Land O' Lakes products that may have been adulterated by Packerland WPC.

- The distribution, sales, or profits for any Land O' Lakes products that may have been adulterated by Packerland WPC.

(*Id.*, ¶¶ 26-28.) Land O' Lakes has justified its refusal to produce production and profit information on the basis that it is not seeking any damages for lost profits. (*Id.*, ¶¶ 25, 28.)

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "Under Federal Rule of Civil Procedure 56(c), parties moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law." *Dockerty-Bostron v. Waukesha Cnty.*, 744 F. Supp. 877, 879 (E.D. Wis. 1990). "If the nonmovant bears the burden of production on an issue at trial, he must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial." *Id.*

"At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 880. "Thus, in a civil case such as this, the record must show that a jury could find by a preponderance of the evidence that the party upon whom the burden of proof is imposed is

5

entitled to a verdict in his favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## II.  ALL CLAIMS SHOULD BE DISMISSED BECAUSE LAND O' LAKES HAS SUFFERED NO ACTUAL INJURY.

"It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997). Compensatory damages are only available to make a party whole, not to punish an alleged wrongdoer for perceived wrongs. *White v. Benkowski*, 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967); *Jones v. Fisher*, 42 Wis. 2d 209, 215, 166 N.W.2d 175 (1969). In order to pursue any of its claims in this case, Land O' Lakes must first show that it suffered an actual economic injury. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 16-17, 270 Wis. 2d 146, 158-59, 677 N.W.2d 233(Plaintiff must prove actual injury in fraud cases); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275 (1985)(civil plaintiff must prove actual injury in RICO cases)[3]; *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246-47, 255 N.W.2d 507 (1977)(To be actionable, a conspiracy must result in damages); *Mira*, 107 F.3d at 473("In light of our holding that the plaintiffs suffered no economic loss, we hold that this case falls within the 'no harm, no foul' rule."); *FMC Corp. v. Boesky*, 727 F. Supp. 1182, 1189 (N.D. Ill. 1989)("A plaintiff must show that his or her injury resulted in economic loss to recover under RICO"). "Proving actual

---

[3] "Because WOCCA was patterned after RICO, . . . federal case law interpreting RICO is persuasive authority in . . . interpretation of WOCCA." *State v. Evers*, 163 Wis. 2d 725, 732, 472 N.W.2d 828 (Ct. App. 1991). The requirements for pleading a claim under WOCCA are the same as those under RICO. *City of Milwaukee v. Universal Mtg. Corp.*, 692 F. Supp. 992, 1001 (E.D. Wis. 1988).

6

injury is a standing requirement for Plaintiffs' RICO and RICO conspiracy claims." *Clement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 863 (N.D. Ill. 2009);

While Land O' Lakes does allege that it encountered some production problems using Packerland WPC, it has conceded that those production problems did not result in any decreased or lost profits, and that it is not seeking any lost profits damages in this case. [4] (Second Amended Complaint, ECF 106, ¶ 46; Pltf. Prop. Mat. Facts, ¶¶ 17, 25.) There have been no customer complaints, returns, or recalls of any feed product produced using Packerland WPC. (Pltf. Prop. Mat. Facts, ¶¶ 18-21.) There were no reports of adverse effects on any animals that ingested its feed products that contained Packerland WPC. (*Id.*, ¶ 22.) Land O' Lakes used all of the Packerland WPC it purchased, and made a normal profit on its use. (*Id.*, ¶ 4-5, 17, 25.) Land O' Lakes can point to absolutely no economic harm or actual injury it suffered from its purchase and use of Packerland WPC.

A company that purchases and uses an ingredient to produce a product that it then sells is not entitled to recover the amount of money it paid for the ingredient, even if it is later determined the ingredient was defective and/or not to specification. *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, 848 F. Supp. 2d 663, 672 (N.D. Tex. 2012). Likewise, allegations that a product is worth less than what was paid for it because it is defective are not sufficient in the absence of any proof the product has actually malfunctioned or caused an economic injury. *Tietsworth,* 2004 WI 32, ¶¶ 17-21, 270 Wis. 2d at 159-62. What Land O' Lakes really seeks is windfall profits. But civil law does not exist for litigants to misuse the process in an attempt to make windfall profits when they have suffered no economic loss. *Mira,* 107 F.3d at 473. Land

---

[4] Damages caused by a production slowdown are an aspect of lost profits damages. *See generally Cambridge Plating Co., Inc. v. NAPCO, Inc.*, 85 F.3d 752, 772 (1st Cir. 1996). And any "out-of-pocket damages are limited to actual damages such that plaintiffs' losses must be netted against any of their profits attributable to the same fraud." *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010).

7

O' Lakes has suffered no actual economic injury, has not lost any of its normal profits using Packerland WPC, and therefore has no standing to pursue any of its claims in this case.

**III.   THE TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE.**

Land O' Lakes' tort claims are additionally barred by the economic loss doctrine. "Under the economic loss doctrine, Wisconsin law bars tort claims which seek only 'economic losses' related to a commercial transaction." *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). "Economic loss is generally defined as damages resulting from inadequate value because the product is 'inferior and does not work for the general purposes for which it was manufactured and sold.'" *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 24, 293 Wis. 2d 410, 428, 716 N.W.2d 822 (2006)(quoting *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400-01, 573 N.W.2d 842 (1998)). Fraud and misrepresentation claims are amongst the tort claims barred by the economic loss doctrine. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 42-44, 283 Wis. 2d 555, 585-86, 699 N.W.2d 205 (2005). While Wisconsin recognizes a narrow fraud in the inducement exception to the economic loss doctrine, the exception only applies if the alleged fraud "concerns matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract."[5] *Kaloti Enters.,* 2005 WI 111, ¶ 42. In this case, the alleged fraud (adding non-natural NPN to WPC) is inextricably intertwined with the quality and characteristics of the WPC supplied by Packerland. As such, the fraud in the inducement exception does not apply, and Land O' Lakes fraud claims are barred by the economic loss doctrine.

---

[5] "To further explain, misrepresentations that concern 'the quality or character of the goods sold,' are either: (1) expressly dealt with in the contract's terms, or (2) if they are not dealt with explicitly in the contract's terms, they go to reasonable expectations of the parties to the risk of loss in the event the goods purchased did not meet the purchaser's expectations." *Kaloti Enters.,* 2005 WI 111, ¶ 43(internal citations omitted)(quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 545 (1995).

8

The economic loss doctrine also dooms Land O' Lakes' civil conspiracy claim. "To state a cause of action for civil conspiracy, the complaint must allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Onderdonk*, 79 Wis. 2d at 246-47. Civil conspiracy itself is not a tort barred by the economic loss doctrine, but a civil conspiracy claim requires actionable torts to support it. *Id.* at 246-47; *Seagull v. Hurwitz*, 114 Wis. 2d 471, 481-82, 339 N.W.2d 333 (Ct. App. 1983). "It is the tort, and each tort, not the conspiracy, that is actionable." *Id.* at 481. As the economic loss doctrine bars all of Land O' Lakes' tort claims in this case, no wrongful act remains upon which to proceed with the civil conspiracy claim – and it should likewise be dismissed.

## IV. THE RICO CLAIMS ARE TIME-BARRED.

"The statute of limitations for a civil RICO cause of action is a fairly generous four years." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations–the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Id.* at 674. The "statute of limitations begins running even if the plaintiff is unaware of the pattern of racketeering activity." *Id.*(citing to *Rotella v. Wood*, 528 U.S. 549, 555, 558, 120 S. Ct. 1075 (2000)). "[I]t is the discovery of the injury, not the elements of a particular claim, that gets the clock ticking." *Cancer Found.,* 559 F.3d at 675. "Discovery occurs when a plaintiff knows or should have known her injury." *Boylan v. McGeever*, No. 03-C-7497, 2004 WL 1794484, at *2 (N.D. Ill. Aug. 10, 2004)(Attached hereto as Ex. A). "[A]ll the plaintiff need know is that he or she was injured, the plaintiff need not be aware of all the facts surrounding

9

that injury and even need not be aware that the injury was caused by a civil conspiracy." *Id.* at *3.

In this case, the only injuries alleged by Land O' Lakes were the production problems allegedly caused by Packerland WPC. [Amended Complaint, ECF 106, ¶ 46.] Land O' Lakes became aware of the production problems in mid-2009, and believed at that time that Packerland WPC was causing the production problems. (Pltf. Prop. Mat. Facts, ¶¶ 6-11.) By October 2009, Land O' Lakes knew that certain batches of Packerland WPC had high pH levels, smelled of ammonia, and had higher than naturally occurring levels of NPN. (*Id.*) In October 2010, Land O' Lakes warned Dairy Directions to stop sending WPC with such high unnatural levels of NPN because it "doesn't qualify as condensed WPC" and was "obviously not acceptable". (*Id.*, ¶ 13.) By October 2010, Land O' Lakes believed that its alleged production problems with Packerland WPC were being caused by the unnaturally high levels of NPN in Packerland WPC. (*Id.*, ¶ 14.)

Land O' Lakes was aware of its injury, and the perceived cause of its injury, before November 2, 2010 – four years prior to the filing of this lawsuit. The only fact Land O' Lakes didn't know by the close of October 2010 was *how* the unnatural levels of NPN were getting into Packerland WPC. But this is not enough to toll the statute of limitations for a RICO claim. *Cancer Found.,* 559 F.3d at 675; *Boylan,* 2004 WL 1794484, at *2. Land O' Lakes RICO and RICO conspiracy claims are time-barred and should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that summary judgment be granted in their favor, and that all of Land O' Lakes claims be dismissed.

10

KRAVIT HOVEL & KRAWCZYK, S.C.

                                             *s/ Jon E. Fredrickson*
                                            Jon E. Fredrickson
                                            *Attorneys for Daniel J. Ratajczak, Jr., Scott A.*
                                            *Ratajczak, Angela Ratajczak, and the Daniel J.*
                                            *Ratajczak, Jr. and Angela R. Ratajczak Revocable*
                                            *Trust Dated April 25, 2012*

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson Street – Fifth Floor
Milwaukee, Wisconsin 53202
(414) 271-7100
(414) 271-8135 (Facsimile)
jef@kravitlaw.com

Dated: September 3, 2015