# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAND O'LAKES, INC.,

    Plaintiff,

RURAL MUTUAL INSURANCE CO., et al.,

    Intervening Plaintiffs,

    v.

DANIEL J. RATAJCZAK, JR., et al.,

    Defendants.

Case No. 14-C-1388

# DECISION AND ORDER

    Plaintiff Land O'Lakes filed this action against Defendants Daniel, Scott and Angela Ratajczak, alleging that from 2006 to 2012 the defendants sold it adulterated whey protein concentrate for use in Plaintiff's cattle food supplement. Four of the defendants' insurers (First Mercury, Indian Harbor, Regent, and Rural Mutual) have been allowed to intervene (ECF No. 62). Each of the insurers has filed a motion for summary judgment, asking this Court to find that they have no obligation to defend Defendants Daniel J. Ratajczak, Jr. ("Daniel"), Scott A. Ratajczak ("Scott"), Angela R. Ratajczak ("Angela") or Daniel J. Ratajczak, Jr. and Angela R. Ratajczak Revocable Trust Dated April 12, 2012 ("the Trust") in this lawsuit. (ECF No. 138, 141, 143, 145). The motions are fully briefed and ready for disposition. For the reasons that follow, the motions will be granted.

**BACKGROUND**

The underlying facts in this case have been set out in the parties' briefs and this Court's Decision and Order on Defendants' Motion for Summary Judgment. Each of the insurance policies at issue here provide coverage for "property damage" caused by an "occurrence," defined (in part) as an "accident." Though the policies each include coverage for other events and include exclusions, those other provisions are not relevant for the purpose of deciding these motions.

**ANALYSIS**

**A. The Duty to Defend**

"An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 18, 660 N.W.2d 666, 673 (quoting *Sch. Dist. of Shorewood v. Wausau Ins. Companies*, 170 Wis. 2d 347, 364, 488 N.W.2d 82, 87 (1992)). Pursuant to this "four corners" rule courts determine whether insurers have a duty to defend based solely on the complaint, "without resort to extrinsic facts or evidence." *Id.* Under Wisconsin law the "duty to defend is necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." *Id.* at ¶ 20. As such, courts will assume reasonable inferences in the allegations of the complaint and "resolve any doubt regarding the duty to defend in favor of the insured." *Id.* (citing *Wausau Tile, Inc. v. Cty. Concrete Corp.*, 226 Wis. 2d 235, 266, 593 N.W.2d 445, 459 (1999)).

**C. No Property Damage**

Recent Wisconsin Supreme Court precedent entirely disposes of the issues in these motions. Briefing was finalized on these motions as of November 25, 2015. On March 1, 2016, the Wisconsin Supreme Court decided *Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.*, 2016 WI 14, ¶ 36, 367 Wis. 2d 221, 876 N.W.2d 72, 82. The Wisconsin Court of Appeals had held that the mere incorporation of an undesirable item into a product gives rise to "property damage" as that term is defined in the commercial general liability (CGL) insurance policy. *Id.* at ¶ 85. *Wisconsin Pharmacal* reversed the court of appeals, holding that "there is no 'property damage' caused by an 'occurrence'" where "the incorporation of a defective ingredient" causes harm to that integrated product. *Id.* The holding of *Wisconsin Pharmacal* comports with the Wisconsin Supreme Court's earlier decision in *Wausau Tile, Inc. v. Cty. Concrete Corp.*, 226 Wis. 2d 235, 249, 593 N.W.2d 445, 452 (1999) ("Damage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property.'"). However, whereas *Wausau Tile*'s holding explicitly dealt with the economic loss doctrine, *Wisconsin Pharmacal* extended that reasoning to the context of a duty to defend action. *Wisconsin Pharmacal Co., LLC*, 2016 WI 14 at ¶¶ 17–19.

As Defendants wrote before the Wisconsin Supreme Court case of *Wisconsin Pharmacal* was decided: "[The facts in *Wisconsin Pharmacal*] are materially indistinguishable from the facts alleged in [Land O'Lakes'] complaint." (Def.'s Resp. 22, ECF No. 161). Defendants are correct. *Wisconsin Pharmacal* involved a supplier of probiotic bacteria (LRA) and a manufacturer who combined the bacteria with other ingredients to make a probiotic feminine supplement. 2016 WI 14 at ¶ 4. Problems arose when the supplier of the LRA supplied the incorrect bacterial ingredient,

3

thus rendering the manufacturer's final product "worthless." *Id.* at ¶ 5–7, 43. The present case involves a materially indistinguishable scenario. Packerland provided Land O'Lakes defective WPC that was mixed into Land O'Lakes' final animal feed products. I agree with Defendants that the only possible property damage alleged in the complaint is the damage to Land O'Lakes' animal-milk replacer products that Packerland's Condensed Whey Protein Concentrate was mixed into. (Def.'s Resp. 22–23, ECF No. 161). But as the holdings of *Wausau Tile* and *Wisconsin Pharmacal* make clear, damage by combining a defective component into an integrated system or product is not "property damage." The reasoning of those cases is sound:

> What constitutes harm to other property rather than harm to the product itself may be difficult to determine. A product that nondangerously fails to function due to a product defect has clearly caused harm only to itself. A product that fails to function and causes harm to surrounding property has clearly caused harm to other property. However, when a component part of a machine or a system destroys the rest of the machine or system, the characterization process becomes more difficult. *When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself.*

*Wausau Tile*, 226 Wis. 2d at 249 (emphasis added by court) (quoting RESTATEMENT (THIRD) OF TORTS § 21 cmt. e (1997)). The same reasoning applies to animal feed—once the WPC is mixed into the product, it becomes the product and does no harm to other property. Therefore, there can be no "property damage" in this case, and so the insurers have no duty to defend under the policies.

**D. No Occurrence**

The complaint also lacks any allegation of an "occurrence" that could trigger a duty to defend for the insurers. Each policy includes language that extends coverage only to "occurrences" caused by "accidents." Defendants argue that paragraphs 75 and 85 of the second amended complaint could form the basis of a claim for negligence, which could arguably be covered under

4

the policies and trigger the insurers' duty to defend. Paragraph 75 states: "Daniel, Scott and Angela made the representations knowing them to be untrue or *recklessly without caring whether the representations were true or false*." (Second Am. Compl. ¶ 75, ECF No. 106) (emphasis added). Paragraph 85 states: "Daniel, Scott and Angela made the representations with personal knowledge of the falsity of the representations or *were so situated that they necessarily ought to have known that the representations were false*." *Id*. at ¶ 85 (emphasis added). According to Defendants, each of these paragraphs should be read as potentially encompassing unintentional misrepresentations. Defendants' arguments fail for two reasons.

First, Paragraphs 75 and 85 should not be read in a vacuum and cannot reasonably be read as encompassing negligent misstatements. Paragraphs 75 and 85 come in the context of Plaintiff's fraudulent misrepresentation (¶ 75) and strict liability fraud (¶ 85) claims. In the case of both paragraphs 75 and 85, the subsequent paragraphs allege that Defendants made the false misrepresentations "with the intent to deceive and defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the Product from Packerland." (Second Am. Compl. ¶¶ 76, 87, ECF No. 106). Thus, though the particular sub-component of these claims may potentially set out a negligent act (misrepresenting the cause of Land O'Lakes' production problems), there is no way to read the complaint to find only a claim of negligent misrepresentation (for inducing Land O'Lakes to purchase more products).

Second, under Wisconsin law, a negligent misrepresentation does not constitute a covered occurrence for commercial general liability (CGL) insurance policies. In *Everson v. Lorenz* the Wisconsin Supreme Court concluded that a negligent misrepresentation in a real estate transaction did not constitute an "occurrence" for the purposes of a CGL insurance policy. 2005 WI 51, ¶ 20,

280 Wis. 2d 1, 15, 695 N.W.2d 298, 305. According to the *Everson* court, "where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." *Id.* Therefore, even if Defendants were correct that the second amended complaint alleged a negligent misrepresentation claim, it would not trigger a duty to defend for the insurers.

Defendants argue that the *Everson* standard has been supplanted by the subsequent cases of *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448, (*Stuart II*) and *Schinner v. Gundrum*, 2013 WI 71, 349 Wis. 2d 529, 833 N.W.2d 685. According to Defendants, the holding of *Everson* was rendered uncertain in the fractured decision of *Stuart II*, leading the court to take up and alter the interpretation of "occurrence" in *Gundrum*. Defendants overstate the importance of these decisions, neither of which overruled *Everson*. Though there was some disagreement between the plurality and concurring opinions in *Stuart II*, both took *Everson* to be good law and no combination of opinions constituted a majority to overrule *Everson*. *Stuart*, ¶¶ 32, 97–99. Not surprisingly the *Gundrum* court assumed that *Everson* was still valid even after *Stuart II*. 2013 WI 71, at ¶ 64. Additionally, *Gundrum* grappled with a very different legal question than *Everson*: whether a fight at an underage drinking party constituted an "occurrence." *Id.* at ¶ 64. *Gundrum* did not involve a misrepresentation and did not address whether a claim of negligent misrepresentation is a covered "occurrence." As such, *Everson* remains the law in Wisconsin and negligent misrepresentations do not constitute covered "occurrences" for CGL policies.

Therefore, the complaint does not allege an "occurrence" arguably covered by the policies. *Fireman's Fund Ins. Co. of Wis.*, 2003 WI 33, ¶ 20.

6

# CONCLUSION

Given my conclusion that the insurers do not have a duty to defend based on either the lack of an occurrence or the lack of property damage, I need not discuss the remaining issues raised by the motions. Based upon the foregoing analysis the insurers' motions for summary judgment (ECF Nos. 138, 141, 143, 145) are **GRANTED**. Having decided in a separate decision that the Defendant insureds are entitled to summary judgment on Plaintiff Land O' Lakes claims against them, this decision finally resolves all issue in the case. The Clerk is therefore directed to enter judgment dismissing all claims of Plaintiff Land O' Lakes against Daniel, Scott, and Angela Ratajczak on their merits and with prejudice. The judgment shall also declare that Intervenors First Mercury Insurance Co., Indian Harbor Insurance Company, Rural Mutual Insurance Company, and Regent Insurance Company do not owe a duty to defend Daniel, Scott, Angela Ratajczak and the Daniel and Angela Ratajczak Revocable Trust against Land O' Lakes' claims under their respective policies of insurance.

**SO ORDERED** this 24th day of August, 2016.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Judge